## METROPOLITAN LIFE INSURANCE COMPANY

*v.*

## JOHN HOOPPEL et al.

[Decided October 16th, 1909.]

1. The term "beneficiary," as used in insurance, means such person as should stand in the capacity of the beneficiary according to the established course of the insurance business of the company with its policyholders when the policy becomes payable.

2. The rule that, where a life insurance policy payable to a specified beneficiary had been in force for several years and the beneficiary is changed, the original beneficiary is entitled to receive from the proceeds the value of the policy at the time of the change, does not apply to industrial insurance.

3. An industrial policy and the application made a part thereof provided that the company would pay the person designated in the fifth condition therein set forth on receipt of proofs of death, &c., a stipulated sum. The fifth condition, however, did not contain a specification of the beneficiary, but only an enumeration of persons, to any one of whom the company might pay the sum stipulated in the discharge of its obligation, provided in support thereof the company could subsequently produce the policy and a receipt for the amount paid, signed by the party receiving it. The application, however, designated the insured's husband as beneficiary, and it was the company's custom to permit policyholders to change the beneficiary; it providing a printed blank for that purpose.— *Held,* that the original beneficiary designated in the application had no vested interest in the insurance during the life of the insured, and, she having changed the beneficiary in accordance with the company's custom and appointed another, the latter was entitled to the entire proceeds of the policy.

---

Interpleader. On final hearing between contesting claimants to the fund.

*Mr. James Benny,* for the defendant John Hooppel.

*Mr. Andrew J. Steelman,* for the defendant Mary E. Cooling.

STEVENSON, V. C.

My conclusion in this case is that the fund should be answered to the defendant Mary E. Cooling.

1. The important facts are as follows:

The policy, which bears date May 21st, 1883, upon the life of the deceased, Mrs. Mary A. Hooppel, was issued by the Metropolitan Life Insurance Company to Mrs. Hooppel in pursuance of its scheme of industrial insurance. The contents of Mrs. Hooppel's written application for the policy, and of the policy itself, are sufficiently disclosed for the purposes of the present examination in the opinion of Mr. Justice Van Syckel in *Metropolitan Life Insurance Co.* v. *Schaffer (1887), 50 N. J. Law (21 Vr.) 72.* When this policy was issued the evidence shows that the company had established, and were maintaining, the custom of permitting their policyholders to substitute a beneficiary for the one named in the application. It provided a printed blank for the purpose entitled "Change of Beneficiary" to be executed by the holder of the policy, and duly witnessed. The inference is that in most cases the blank was filled out and witnessed by an officer of the insurance company. Mrs. Hooppel, in her application in 1883, in the proper blank named as the "person to whom benefit is to be paid" the defendant John Hooppel, whom she described as her husband. Unquestionably if Mrs. Hooppel had died while conditions remained unchanged, the defendant John Hooppel would have been the only person in existence who could plausibly claim to be the beneficiary. But on November 26th, 1888, an agent of the insurance company, at the request of Mrs. Hooppel, filled out one of the blank forms entitled "Change of Beneficiary" above mentioned, and the same was thereupon signed by Mrs. Hooppel and witnessed by the agent, and thereafter remained in the possession of the company until Mrs. Hooppel's death. By this instrument Mrs. Hooppel undertook to substitute her daughter, the defendant Mrs. Cooling, for her husband as "the beneficiary." The paper, in part, reads as follows:

"I do hereby request and authorize said company in the event of my death to pay over the proceeds of said policy to Mary E. Hooppel (now Mary E. Cooling) my daughter * * * instead of the person or persons designated in the application for said policy."

The insurance company accepted this so-called "change of

beneficiary" and on the strength of it Mrs. Hooppel went on for years paying her premiums.

Mary A. Hooppel, the holder of the policy, with whom the insurance company made this contract, died January 16th, 1907, having until her death had possession of the policy, and thereupon the defendant John Hooppel, claiming to be the husband of the deceased, and also "the beneficiary" within the meaning of the contract of the insurance company, took possession of the policy and presented the same to the company with proofs of death and demanded payment. The insurance company finding the "Change of Beneficiary" on file, declined to pay. The defendants, the husband and daughter of the deceased, not being able to agree in regard to the payment of the money, this interpleader suit was instituted, and the fund, after deducting complainant's costs and counsel fee, which remains in court to be awarded to one or the other or both of these claimants, is less than $300.

2. The contract of the insurance company in respect to the very vital question to whom the company is legally bound to pay the amount of the policy is singularly obscure. In the *Schaffer Case* above cited Mr. Justice Van Syckel states (at *p. 74*) that "there is no contract or agreement to pay to the beneficiary named in the application." The company in its policy agrees "to pay to the person or persons designated in Condition Fifth" therein set forth, upon receipt of proofs, &c., the stipulated sum. But when we turn to condition five we do not find a specification of the person or persons to whom the stipulated sum must be paid; we find only an enumeration of persons to any one of whom the company may, in discharge of its obligation, make a payment of the stipulated sum provided in support of such payment the company can subsequently produce the policy and a receipt for the amount paid, signed by the party who received the same. We find the contract of insurance in this case not only in the policy which Mrs. Hooppel received and kept in her possession, but also in the application for the policy signed by her and retained by the insurance company. The policy refers to the application and makes it "part of this contract." Notwithstanding the attempted wholesale incorpo-

ration in the policy of this complex paper, containing many words which do not import any contract obligation on the part of anybody, it may not follow that every proposition contained in the application must be deemed as a promise on the part of both of the contracting parties, or the one of them to whom the proposition can be attributed most naturally or plausibly, or with the least possible disregard of common sense. Taking the two clauses of the policy above referred to, viz., the express agreement of the company to pay, and the enumeration of persons to any one of whom a binding payment under conditions stated may be made by the company, in connection with the appointment of the beneficiary contained in the application, the result seems to be that the legal obligation of the company is either—

(1) To pay the amount of the policy to any member or member of any of the classes of persons named in condition five, or

(2) To pay such amount to "the beneficiary."

If the legal obligation of the company is to pay the amount of the policy to the beneficiary, then, carrying out the suggestion of Mr. Justice Van Syckel in the *Schaffer Case,* the terms of condition five, so far as they warrant payment to a relative or connection of the deceased, "operate as an appointment both by the assured and the beneficiary of persons, any of whom are authorized to receive payment of the sum agreed to be paid." This view seems to be more consistent than the other view above stated with the theory of the contract as a contract of life insurance, rather than a contract for a burial fund. It would be put to a test if a relative, not the beneficiary, should bring an action at law in his own name against the insurance company, and the company should defend on the ground that while the policy provided for paying the amount thereof to a relative, such relative merely acted under an appointment on behalf of the beneficiary, and that the beneficiary alone could sue at law in his own name. If by naming a party as the beneficiary in the application the assured merely adds an extra person to those enumerated in condition five to whom a binding payment under the conditions stated can be made by the company, the words employed are certainly inapt and misleading. The party so nominated in no

proper sense, especially having in view the common use of insurance terms, could be called "*the* beneficiary." The language of the application where the beneficiary is styled as the "person to whom benefit is to be paid" is also inappropriate. The description should not be of a person to whom the so-called benefit is to be paid, but of a person who by the appointment is merely added to the numbers of eligible persons to whom the company can make a binding payment under certain specified conditions, or rather make a payment which, under certain specified conditions, subsequently will be binding upon all parties concerned—all parties who were "lawfully entitled" to receive such payment.

Perhaps a third theory of the legal obligation of the insurance company under this peculiar contract is tenable, viz., that the company enters into a legal contract with every person coming within the enumeration of condition five which can be legally enforced by such person in an action at law, while the equitable title to the money, to whomsoever it may in fact be paid, is deemed to be vested in the beneficiary. One difficulty, perhaps insurmountable, in the way of this theory is perceived when it is considered that it permits "any relative by blood or connection by marriage," a brother-in-law, for instance, to maintain an action at law on the policy in his own name. The insurance company in the policy expressly agrees "to pay the person or persons designated" in condition five, the amount of the policy upon production of proofs of death. There is no requirement here that the person to whom the payment must be made must produce the policy. The company can discharge all its contract obligations by paying to any relative or connection by marriage, husband or wife of the deceased, the amount named in the policy, provided subsequently when such payment is challenged it can produce the policy and a receipt signed by the party to whom the payment was made, and who, of course, comes within the enumeration of condition five.

Perhaps also a legal theory of this insurance contract is tenable which makes it enforceable in an action at law brought by the beneficiary or his executor or administrator, or in the absence of any beneficiary by the executor or administrator of Mrs.

Hooppel, the party with whom the contract was made, while at all times and under all conditions the insurance company has the right under condition five to discharge itself from all liability to the party "lawfully entitled" by making payment in the manner therein prescribed. Such a theory would not permit a relative, husband or wife of the deceased, as such, to maintain an action at law for the amount of the insurance, although supported by a tender of the policy for surrender.

3. Whatever may be the true theory of the legal obligation of the insurance company and of the legal and equitable rights of "the beneficiary" under this insurance contract, the result so far as concerns the present case seems to me to be the same. The awarding of this fund to the defendant John Hooppel or to the defendant Mary E. Cooling, or of a portion of the fund to each of these two claimants, depends upon the true construction to be placed upon the term "the beneficiary" in the contract of the insurance company which is contained in the application and in the policy. The defendant John Hooppel makes no claim to this money as husband of the deceased, although it would seem that the insurance company, when he took the policy to its office and demanded payment, might have made a binding payment to him, taking from him a receipt which with the surrendered policy would protect such payment in the future from all attack. The defendant Mary E. Cooling makes no claim as daughter, although it would seem also that the insurance company after obtaining possession of the policy might have made a binding payment of the amount to her and insured the validity of such payment by filing her receipt for the same with the surrendered policy.

The sharp question is simply which of these two claimants must be deemed "the beneficiary" within the meaning of this contract of insurance. The contract of the company contained in the policy is not to pay a sum of money at the date of the contract, or at a specified date thereafter, it is a contract to pay to a certain person or certain persons a sum of money upon the death of Mrs. Mary A. Hooppel, which event would certainly occur at some time in the future, but might occur at any time during a long and undefined period. Payment at a future time

is contemplated by this contract, and such payment is provided for thereby. The contract is not to make actual physical payment to the beneficiary named in the application, as Mr. Justice Van Syckel points out. Such beneficiary might be dead. When we consider that when these words were employed and this future payment was contemplated and provided for, the insurance company had in full operation a system by which its policyholders from time to time changed their beneficiaries, it seems to me that according to a well-settled rule for the construction of contracts, and according to common sense the conclusion is inevitable that the term "the beneficiary" meant such person as should stand in the capacity of the beneficiary according to the established course of the insurance business of the company with its policyholders at the time in the future when the amount specified in the contract would become payable.

It is worth while to note that the "change of beneficiary" executed by Mrs. Hooppel did not undertake merely to appoint the daughter in the place of the husband as a person to whom a valid and binding payment might be made by the company, provided the company took her receipt and stood ready to produce the policy in support of its action in making such payment. The language is quite different from that employed in the application. The instrument positively instructs the company to pay the proceeds of the policy to the daughter. The paper seems to assume that the company had obligated itself theretofore to pay the amount of the policy to the husband who was named in the application as the beneficiary, and undertakes to substitute a new beneficiary to whom the proceeds of the policy are in any event to be paid.

4. We must now deal with the proposition that Mrs. Hooppel, the assured, was not capable under our law of substituting her daughter for her husband as the beneficiary in this policy. The law on this subject which has been very fully discussed by counsel is very far from settled. The authorities in different jurisdictions are conflicting. It seems to be conceded that the leading case in this state is *Landrum* v. *Knowles, 22 N. J. Eq. (7 C. E. Gr.) 594.* In my judgment, the law which interferes

with the right of two contracting parties to remodel, change or abolish their contract obligations as they see fit, merely because a third party, a stranger to the contract and its consideration, will be benefited by the performance of it in its original form, should not be extended. I think the decisions in New Jersey support this view. If the rule laid down in *Landrum* v. *Knowles*, and therein applied to the ordinary form of life policies where the beneficiary is named, and the insurance company promises to pay the stipulated sum to such beneficiary, is applied to this present case, it would be necessary to determine how to apportion this small sum of money between the original beneficiary, the defendant John Hooppel, and the substituted beneficiary, the defendant Mary E. Cooling. No surrender value of this policy has been proved, and the intimations are that it had no surrender value when the attempted substitution was made. The original beneficiary had the full value of this policy for five years. During that period in the event of the death of the assured, according to one of the views above expressed, he would have been equitably entitled to the amount of the policy no matter to whom the insurance company might actually pay the same in discharge of its entire liability. Whether there is any satisfactory and equitable way of apportioning the amount of this policy between these two successive beneficiaries, I shall not undertake to discuss, because, in my opinion, the rule laid down in *Landrum* v. *Knowles* must be confined to life policies where a definite beneficiary is named to whom the amount of the policy is expressly made payable, and ought not to be applied to these industrial contracts of insurance which are collected either by "the beneficiary," or an executor, or an administrator, husband or wife, or relative by blood or connection by marriage of the assured, and which are entered into by the parties while the insurance company is maintaining the custom of permitting its policyholders from time to change their appointment of the beneficiary originally made in their applications. I can see no final gift of the amount of the policy, or any portion of it to the person named as beneficiary in the application. The course of business with

reference to which this contract was made permitted a succession of beneficiaries. Contemplating this course of business, the nomination of John H. Hooppel as the beneficiary, does not indicate any absolute donative purpose on the part of the assured when she made her contract with the company. An essential element of a gift is conspicuously wanting. The only donative purpose which can be attributed to Mrs. Hooppel when she entered into this contract with the insurance company was to donate the amount of the policy in the event of her death, while the policy was in force, to her husband unless prior to her death she should make up her mind to donate that amount to some other beneficiary. It may be conceded, that, in analogy with some of these decisions, which give the third party a vested interest in a contract to which he is an utter stranger, a vested equitable interest might be established on behalf of the defendant John Hooppel which would give him some proportionate share of the amount of the policy. To recognize any such equity would, I think, require an extension of the law of judicial decision in a direction toward which it should not proceed, as I have already indicated, and might involve industrial insurance in difficulties which would impair its usefulness. The main object of a large proportion of these small industrial policies is to provide money not for the use of "the beneficiary" or other person who may be empowered to collect the same, but to pay the burial expenses of the deceased. This well-known fact sharply distinguished these industrial policies from ordinary life policies where the amount is intended to be paid to the beneficiary for his own use. The application to these little policies of the principle or theory that something is vested in "the beneficiary" while the policy stands payable, or possibly payable, to him—that some irrevocable gift has been made to him by the party who contracts with the insurance company and pays the entire consideration of the contract, would produce inconvenient results if the policy should remain outstanding as in this case over fourteen years, and during that period in order to accomplish the real purpose of the insurance three or four or more changes of beneficiary should be made. The difficulty

of apportioning $300 according to any equitable principle in a case like this among four or five different parties, including perhaps executors of deceased beneficiaries, is apparent. Whatever may be true in the case of ordinary life insurance policies or certificates of benefit societies, where the beneficiary is named and the amount of the insurance is intended to go to him for his own use, I fail to find in the case of this industrial insurance policy anything to indicate that Mrs. Hooppel at any time made a gift or conveyance of a "vested" right to her husband when she made her application and took out this policy. Mrs. Hooppel entered into this contract with the course of business of the insurance company in view, and that course of business, I think, determines the meaning of the phrase "the beneficiary," which was employed in the contract which she accepted from the company. There being no controlling decision on this subject, I am unwilling to recognize any equity on the part of the defendant John Hooppel which could prevent the assured and the insurance company, these two contracting parties, from changing the beneficiary who would be entitled to receive the entire amount of the policy as they might from time to time see fit.

5. The question has been argued in this case whether the law of New Jersey or the law of New York applies to this case. Each side of this question has been sustained by citation of authorities. I shall not undertake the determination of this matter because it has not been shown that the law of New York, as contained in statutes or the decisions of the courts, is in any degree different from the law of New Jersey upon any proposition which is controlling in this case.