CHARLES MCCARTHY v. THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation of the State of Delaware.

(*November* 17, 1953.)

RICHARDS, P. J., sitting.

*Edmund N. Carpenter, II*, for plaintiff.

*William F. Lynch, II*, for defendant.

Superior Court for New Castle County, No. 1058, Civil Action, 1952.

RICHARDS, P. J.:

Rule 50(b) provides that when a motion for a directed verdict, made at the close of all of the evidence, is denied, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the verdict, the party who has moved for a directed verdict, may move to have the verdict and any judgment entered thereon set aside and to have a judgment entered in accordance with his motion for a directed verdict.

The defendant's motion based upon this rule again raises the question of whether there is sufficient evidence of negligence

on the part of the defendant to support a verdict for the plaintiff, and whether there was contributory negligence on the part of the plaintiff which was the proximate cause of the accident and resulting injuries.

■ If the motion is granted, it does not mean that a new trial is ordered, but a judgment is directed to be entered in favor of the defendant upon the testimony already taken upon which the verdict for the plaintiff was rendered by the jury. *Hartman v. White Motor Co., D. C. Mich.* 1952, 12 *F. R. D.* 328.

■ Before directing a verdict on a motion of this character, the Court should be convinced that there is no substantial evidence to support a verdict for the plaintiff. *Gunning v. Cooley*, 281 *U. S.* 90, 50 *S. Ct.* 231, 74 *L. Ed.* 720.

■ The Court is always reluctant to take any question of fact from the jury, but should order a directed verdict for the defendant when it clearly appears that, under the law, a verdict for the plaintiff would not be justified. *Keller v. President, Directors and Company, etc.*, 2 *Terry* 471, 24 *A.* 2d 539.

About midnight on the evening of November 15, 1952, the plaintiff, Charles McCarthy, who was an employee of the Wilmington Country Club, was returning to the club house after visiting some friend in Wilmington. In Company with three other employees of the club, he got off a coach of the Delaware Coach Company at the northwest corner of Mount Vernon Avenue and Pennsylvania Avenue. All three of them started across Mount Vernon Avenue in an easterly direction toward the entrance to the Country Club. The Avenue was strewn with leaves which had banked up along the edge completely covering the bed of it. As the plaintiff proceeded to cross the avenue he stepped upon the leaves at edge of it, and his leg plunged into an open sewer beneath them which they completely covered.

As a result of his fall the plaintiff received a broken ankle and other injuries, making it necessary for him to have hospital and medical care. This action was brought to recover the damage resulting therefrom.

The plaintiff's testimony that the sewer was open on the night in question and that he fell into it, was corroborated by his two companions. Hedley, who was disinterested, testified that he had observed the sewer open on an occasion two months before the accident. At another time two weeks prior to the accident, it had been seen open by Ernest Weber. All of the witnesses agreed that the avenue was strewn with leaves making it difficult for persons using it to see any obstructions that might exist.

Defendant's witnesses testified that when they examined the sewer two days after the accident it was still open, and that the lid was wedged in such a position that special equipment of the Street and Sewer Department was required to put it in its proper position. Three drivers for the Delaware Coach Company, who passed the place where the accident happened several times a day, and were directed to observe existing conditions, testified that they never saw the sewer lid out of place. They admitted, however, that they drove along the other side of the avenue and that their attention was occupied at that point in making the necessary turn. City policemen who passed that area several times a day, and were ordered to observe the condition of the streets and report defects therein, made no report as to the defective condition of this sewer for a period of two months prior to the accident.

Mr. Cooney, an employee of the Street and Sewer Department, testified that he was working in the immediate vicinity of the accident approximately ten days prior thereto and saw nothing wrong with the sewer cover. This witness did not testify that he examined the sewer cover on this occasion but admitted that his time and attention was being given to other things.

Mr. Livingston testified for the defendant that the sewers were cleaned in the fall in order to remove the debris, dirt and fallen leaves; that it was necessary to remove the lid in order to accomplish this; that the lids were difficult to remove and the Street and Sewer Department had special equipment for that purpose; that the lid of this particular sewer fitted very snug

and he and Mr. Lucha were unable to budge it from the position in which they found it wedged several days after the accident.

It appeared that the plaintiff had a more direct route which he could have taken to get to the entrance to the County Club grounds; this route was down the footpath on the westerly side of Mount Vernon Avenue to the lighted northwesterly corner of Mount Vernon Avenue and Pennsylvania Avenue, across Pennsylvania Avenue to the sidewalk and from there in an easterly direction to the Country Club entrance.

It is well established that the Mayor and Council of Wilmington has entire jurisdiction and control over all of the streets within the limits of the city. Acting through its agent, the Street and Sewer Department it is required to keep them in repair and good condition. In discharge of its duty it must exercise due care to prevent or remove holes or obstructions in the streets, which may cause injury to those using them.

It is liable for injury to persons, or damage to property, which is caused by defects in the streets of which it had sufficient notice in time to make the necessary repairs.

Where the City has not had actual notice of defects in the streets from which injury or damage occurs, an implied notice will be presumed if the defects have continued for such a length of time that the City in the reasonable exercise of its duties, should have learned of them. *Seward v. Mayor and Council of Wilmington*, 2 *Marv.* 189, 42 *A.* 451; *Jarrell v. Mayor and Council of Wilmington*, 4 *Penn.* 454, 56 *A.* 379; *Schelich v. Mayor and Council of Wilmington*, 1 *Boyce* 57, 74 *A.* 467; *Anderson v. Mayor and Council of Wilmington*, 6 *Penn.* 485, 70 *A.* 204.

The evidence clearly supports plaintiff's contention that his injuries were caused by the open sewer and that it had been open for an extended time; one witness said he had seen it open two weeks prior to the accident, another said he had seen

it open two months prior to the accident. The evidence did not disclose when an official inspection of this particular sewer had been made by the Street and Sewer Department.

It does appear that Street and Sewer Department has a special device with which to handle the tops or lids of the sewers. There was also evidence that the lid to the sewer in question fits snug and two employees of the Street and Sewer Department were unable to put it on the sewer, after the plaintiff's accident, without the aid of this device.

The accumulation of leaves and other refuse on the street to such an extent that it completely covered an open sewer, making it impossible for persons using the street to see the sewer, is strong evidence that the street had been neglected for considerable length of time.

Whether the City had actual notice that the lid to the sewer in question was not in its proper place, or whether it had actual notice that the leaves and other refuse had accumulated on the street in such amount as to become a hazard to persons using the street, or whether these conditions had existed for such a length of time, that the City, in the reasonable exercise of its duty, should have learned of them, and that notice to the City should be implied, were all questions of fact for the jury.

I am still of the opinion that the defendant's motion for a directed verdict should be denied.

Motion for a directed verdict denied.