**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

<table>
<tr><td>MIDLAND FUNDING, LLC, assignee of<br>Asset Acceptance, LLC, assignee of<br>Citibank, N.A (The Home Depot),</td><td>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>Plaintiff,</td><td>)<br>)</td><td></td></tr>
<tr><td>v.</td><td>)<br>)</td><td>C.A. No. CPU4-14-001135</td></tr>
<tr><td>IRWIN HANBY,</td><td>)<br>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)<br>)<br>)</td><td></td></tr>
</table>

Submitted: January 27, 2015
Decided: February 23, 2015

Mr. Seth Yeager, Esquire
Lyons, Doughty, and Veldhuis, P.A.
15 Ashley Place, Suite 2B
Wilmington, DE 19804
  *Attorney for Plaintiff*

Mr. Douglas Shachtman, Esquire
The Shachtman Law Firm
1200 Pennsylvania Ave., Suite 302
Wilmington, DE 19806
  *Attorney for Defendant*

**DECISION AFTER TRIAL**

This is an action for breach of contract brought by Plaintiff Midland Funding, LLC, ("Plaintiff") as assignee of Asset Acceptance, LLC ("Asset Acceptance"), as assignee of Citibank, N.A. ("Citibank"), against Defendant Irwin Hanby ("Defendant"). Plaintiff brought suit against Defendant for allegedly defaulting on the credit card agreement. Trial was held on January 27, 2015. After Plaintiff's case-in-chief, Defendant moved for a directed verdict, arguing that Plaintiff failed to establish that it is the proper party to bring this action against Defendant. The Court reserved decision on the motion. This is the Court's final decision after trial.

## FACTS

In its Complaint, Plaintiff Midland Funding, alleged that Citibank issued a credit card to Defendant on behalf of The Home Depot, and that Defendant subsequently defaulted on the account, owing a balance of $9,549.80. Defendant denied the substantive allegations of Plaintiff's Complaint, and raised a number of affirmative defenses in his Answer. Defendant also counterclaimed against Plaintiff, alleging that Plaintiff trespassed on Defendant's property to effect service of process.

At trial, Plaintiff's first witness was Mycah Struck ("Struck"), an employee of Midland Credit Management ("MCM"). MCM services accounts and maintains records for Plaintiff. Struck testified that he has been employed with MCM for over three years, and currently serves as a senior legal specialist. Struck testified as follows:

First, Struck testified regarding the background information about Plaintiff's corporate structure. The Encore Capital Group ("Encore") is the parent corporation for MCM, which owns 100% of the shares of Plaintiff, therefore making Plaintiff an indirect

2

subsidiary of Encore. Encore purchases debt portfolio accounts from various financial institutions. MCM manages and electronically maintains the accounts. Plaintiff is assigned the portfolios and collects on the debt. Struck, in his capacity as a senior legal specialist for MCM, reviews and verifies all legal and business documents associated with the assigned debt accounts to ensure that Plaintiff has the correct information.

In these proceedings, Citibank, the original creditor, issued a credit card to Defendant on behalf of The Home Depot. Struck testified that on May 29, 2013, Citibank sold Defendant's credit card account to Asset Acceptance, which subsequently sold a number of portfolios to Plaintiff. Plaintiff then entered into evidence three exhibits that related to the original transaction between Citibank and Asset Acceptance.

First, Plaintiff entered Plaintiff's Exhibit 1, which was a Bill of Sale and Assignment by Citibank to Asset Acceptance, dated May 29, 2013 (the "May 2013 Bill of Sale"). The May 2013 Bill of Sale was a single document, and stated the following: "[Citibank] does hereby transfer, sell, assign, convey, grant, bargain, set over and delivery to [Asset Acceptance], and to [Asset Acceptance's] successors and assigns, the Accounts described in Exhibit 1 and the final electronic file."[1] Plaintiff's Exhibit 1 does not identify any specific accounts involved in the transaction.

Next, Plaintiff submitted Plaintiff's Exhibit 2 into evidence, which was an Affidavit signed on October 28, 2013 that identified Defendant's account as one that Asset Acceptance purchased on May 29, 2013 (the "October Affidavit").[2] The October Affidavit

---

[1] Plaintiff's Exhibit 1.
[2] Plaintiff's Exhibit 2.

specifically identified Defendant's account by referencing the account number's last four digits, and by identifying Defendant as the account holder.[3]

Plaintiff then entered Plaintiff's Exhibit 3 into evidence, which was an Affidavit of Sale of Account by Original Creditor, signed on June 13, 2013 (the "June Affidavit").[4] The June Affidavit stated that Citibank "sold a pool of charged-off accounts" to Asset Acceptance and that "[a]s part of the sale of the [a]ccounts, certain electronic records were transferred on individual accounts to the debt buyer."[5] Attached to the June Affidavit was a document titled "Schedule A," which was completely redacted.

Struck provided conflicting testimony as to how MCM received these documents. At some points during his testimony, Struck stated that Encore purchased Asset Acceptance, however he also stated, a number of times, that MCM purchased Asset Acceptance. When identifying the October 2013 Affidavit, Struck stated, "How we differentiate between ownership [of the debt portfolios] is confusing. Asset Acceptance no longer exists, so MCM is the third buyer on paper but in reality it's the second [buyer]."

Struck later testified that Encore purchased Asset Acceptance, and explained, "Encore purchased the company of Asset Acceptance, LLC, as a whole, however when it comes to processing their accounts and suing on their accounts, the Encore Capital Group cannot do that because the Encore Capital Group is not licensed as a debt buyer." When

---

[3] *Id.*

[4] Plaintiff's Exhibit 3. The Court allowed Plaintiff to submit this exhibit subject to Defendant's hearsay objection, and ruled that this exhibit is not dispositive as to the issue of liability.

[5] Id.

4

asked by counsel to clarify his response, Struck merely described the corporate structure governing the entities.

Plaintiff then submitted Plaintiff's Exhibit 4 into evidence, which were a bundle of original Billing Statements (the "Billing Statements") from The Home Depot, issued by Citibank and associated with Defendant's credit card account. Although the Billing Statements included Defendant's account number, neither Defendant's name nor Defendant's address appeared anywhere on any of the documents.

Plaintiff called Defendant as its second witness. Defendant testified that he obtained a Home Depot credit card during the year of 2009 or 2010, in order to purchase materials needed to renovate his home. Defendant further stated that he received monthly billing statements, and made payments on the account. When presented with the Billing Statements, Defendant acknowledged that the latest statement showed a balance of $9,549.80, but claimed that he did not know if that was the actual amount that he owed.

At the end of Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law, or a directed verdict. Defendant argued that Plaintiff did not establish how, if at all, it came to own the subject account. Defendant questioned the integrity of the evidence proffered by Plaintiff, arguing that the testimony was confusing as to the corporate relationship between Encore, Asset Acceptance, MCM, and Plaintiff. In response, Plaintiff argued that the Court should consider all evidence under the totality of the circumstances, and find that it did establish the connection between Plaintiff and the subject account. The Court reserved decision on the motion, and trial continued.

Defendant then presented its case-in-chief on its counterclaim, and testified to the following: Defendant resides in Wilmington, Delaware, and owns three acres of land. His house sits 300-350 feet from the main road. In October 2013, Defendant installed a camera after experiencing problems with people trespassing onto his property.[6] Approximately three or four months later, Defendant hung multiple "No Trespassing" signs on his property, placing three on or around his house, and three on his detached garage. The No Trespassing signs were red, black and white in color, and measured to 14 x 16 inches.

Defendant testified that on three separate occasions, the process server who effected service for this matter drove onto his property without his permission.[7] Defendant learned of the first incident after reviewing the film from his camera, which showed that the process server stopped and parked his car in front of one of the No Trespassing signs, and waved at the camera. Defendant testified that this man drove onto the property a second time, came down and circled the driveway before leaving. Finally, the process server drove onto Defendant's property a third time, and Defendant spoke with him. The process server remained in his car, asked for Defendant's name, and handed Defendant papers. Defendant took down the car's license plate number, but did not ask the process server to leave his property. At the conclusion of this testimony, Defendant rested.

---

[6] Defendant did not indicate on which building, his home or his garage, he affixed the camera.

[7] Although Defendant was unaware that the person driving onto his property was a process server, he stated that he learned that he was a process server during the litigation of this matter.

In response to Defendant's counterclaim, Plaintiff called Giacimo Bonvetti ("Bonvetti"), the special process server who effected service in this matter, as its witness. Bonvetti testified that he is employed as a special process server, licensed through O'Rourke Investigative Associates, and is tasked with, *inter alias*, serving legal documents. Bonvetti testified that he attempted to serve Defendant at his home on three separate occasions, and explained that he never ventured into Defendant's backyard, nor did he go into Defendant's house. Bonvetti saw two No Trespassing signs on Defendant's house, but stated that there were no signs along the driveway. When he made service, Defendant approached Bonvetti's vehicle, read the papers, and wrote down Bonvetti's license plate number. This concluded Plaintiff's rebuttal.

## DISCUSSION

The first issue before the Court is whether Plaintiff failed to establish that it is the proper party to bring this action against Defendant, thus entitling Defendant to judgment as a matter of law. *Court of Common Pleas Civil Rule* 50 governs Motions for Directed Verdict, and provides that:

> A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict shall state the specific grounds therefor.

When considering a defendant's motion for directed verdict, the Court must view the evidence in a light most favorable to the plaintiff as the nonmovant.[8] To find in favor of the

---

[8] *Rumble v. Longo*, 147 A.2d 511, 513 (Del. Super. 1958).

moving defendant, the Court should be convinced that there is no substantial evidence to support a verdict for the plaintiff.[9]

It is undisputed that Citibank issued Defendant a credit card on behalf of The Home Depot; that Defendant incurred charges on that credit card, and; that a balance remains on the account. However, this matter involves a number of assignments, and in a consumer debt action, a plaintiff with an assignment of debt has the burden to prove the assignment in order to establish that it is the proper party to bring the action.[10] The Court of Common Pleas Administrative Directive No. 2011-1 (the "Directive")[11] establishes pleading requirements for complaints in consumer debt collection actions, and requires creditors to setforth in the Complaint the debt's full chain of title. This pleading requirement emphasizes the importance of an assignee-creditor's burden of proving that it is the proper party to collect on the delinquent account.[12]

In this matter, the Court is unable to resolve the discrepancies within the testimony presented by Plaintiff. Plaintiff clearly established that Citibank originally owned Defendant's credit card account, and that Asset Acceptance purchased the account in May 2013, however Plaintiff failed to establish the current owner of the subject account. While it is clear that MCM received the May 2013 Bill of Sale, the October Affidavit, and the June

---

[9] *McCarthy v. Mayor of Wilmington*, 100 A2d 739, 740 (Del. Super. 1953).

[10] *See Citimortgage, Inc v. Bishop*, 2013 WL 1143670 (Del. Super. Mar. 4, 2013); *Delaware Trust Co.v. Everitt*, 140 A.2d 778, 782 (Del. Ch. 1958); *Dahlink Financial Corp. v. Bochniak*, 2012 WL 1415815 (Del. Com. Pl. Mar. 13, 2012).

[11] Although amended to Admin. Dir. No. 2012-2, however the substance of the Directive remained unchanged.

[12] *Dahlink Financial Corp. v. Bochniak*, 2012 WL 1415845 at *5 (Mar. 13, 2012).

Affidavit as part of a bundle of information within an electronic transfer, it is unclear as to which entity provided MCM with this information, and which entity currently owns the subject account.

During his testimony, Struck stated that Encore purchased Asset Acceptance however; he also stated that MCM purchased Asset Acceptance. Upon the Court's inquiry, Plaintiff's counsel specifically asked Struck how Plaintiff came to own the subject account. Struck was nonresponsive, and restated that Encore purchased Asset Acceptance, and explained that because Encore is not licensed as a debt buyer, it cannot collect on delinquent accounts. When counsel asked Struck to clarify his response, and again asked how Plaintiff came to own the account, Struck re-explained the corporate structure governing the entities.

The documents which plaintiff relies consist of a bill of sale dated May 29, 2013 from Citibank to Asset Acceptance LLC. This document lists no accounts or amounts (Pltf. Exh. #1). The second document plaintiff relies upon to establish the right to the debt is the "Affidavit of Sale of Agreement by Original Creditor" dated June 13, 2013 between Citibank and Asset Acceptance LLC. This document refers to the May 29, 2013 document regarding the sale of a pool of charge off accounts by Citibank to Asset Acceptance LLC. The document refers to purchased accounts, but the account schedule "A" page is blank (Pltf. Exh. #3).

A third affidavit dated October 28, 2013 provides that Citibank on May 29, 2013, sold account 4032 in the name of Irwin T. Hanby to Asset Acceptance with a balance due of $9,549.80. (Pltf. Exh. #2). Plaintiff's final exhibit consists of a series of billing statements from Home Depot to defendant Irwin T. Hanby. (Pltf. Exh. #4).

9

The claim is brought by Midland Funding LLC, assignee of Asset Acceptance, LLC, assignee of Citibank. However, there is no document introduced to establish that there was a sale or assignment to the entity which brings the claim.

I find the documents and testimony insufficient to establish the chain of title in this case. Struck was inconsistent in his testimony, and I find his inability to directly answer counsel's pointed question regarding how Plaintiff came to own the subject account to be of concern. From the evidence presented by Plaintiff, it is unclear as to whether Encore or MCM subsequently purchased the account from Asset Acceptance. Even if Plaintiff had established that Encore purchased the subject account from Asset Acceptance, Plaintiff failed to present any evidence that Encore specifically assigned the subject account to Plaintiff. Plaintiff has failed to meet its burden in establishing that it is the proper party to bring this action and collect on this debt. Therefore, Defendant's Motion for Directed Verdict is granted.

Turning to defendant's claim for trespass, it is well settled in Delaware that parties have a right to question the sufficiency of service of process.[13] In the matter at hand, Defendant claims that that the service of process was insufficient because Bonvetti, the special process server, illegally trespassed upon Defendant's property to attempt service. In order to prevail on a claim for trespass to land, Defendant must prove: (1) that he has lawful possession of the property in question; (2) that the defendant entered onto his property without consent or privilege, and; (3) that he is entitled to damages.[14]

---

[13] Alston v. Dipasquale, 2001 WL 34083824 at *1 (Del. Super. Oct. 19, 2001).

[14] *O'Bier v. JBS Const., LLC*, 2012 WL 1495330 at *2 (Del. Super. April 20, 2012).

Defendant argues that the presence of six large, conspicuous "No Trespassing" signs on his property created an additional protective measure that prevented Bonvetti from entering onto his property. I find that this argument has no merit; the Court appointed Bonvetti to serve processes on behalf of the Court pursuant to *Court of Common Pleas Civil Rule 4(d)*.[15] As an appointed process server, Mr. Bonvetti was privileged to enter onto Defendant's property for purposes of discharging the duties for which the Court appointed him. Therefore, I find that Bonvetti was not unlawfully trespassing onto Defendant's property, and the service of process in this matter was properly perfected.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Directed Verdict is granted for Plaintiff's failure to establish the subject account's chain of title.

On Defendant's counterclaim for insufficient service, the Court finds in favor of Plaintiff because service was properly effected.

SO ORDERED

_____
The Honorable Alex J. Smalls.
Chief Judge

Midland Funding-OP  Feb 2015

---

[15] Specifically, the Court renewed Mr. Bonvetti's Application for Designation as a Special Process Server on December 26, 2013, and approved his Application for the entire calendar year of 2014.