NELLIE O'HARA, individually and as next friend of Thomas O'Hara, Plaintiff Below, Appellant, v. PETRILLO BROS., INC., a Delaware corporation, Defendant Below, Appellee, v. WAYNE HORNER and Harry Hitchens, minors, Third-Party Defendants Below, Appellees.

(*January* 24, 1966)

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

*Vincent A. Theisen* and *Victor F. Battaglia,* of Theisen & Lank, for

plaintiff b€ w, appellant.

*Alfred M. Isaacs,* of Flanzer & Isaacs, for defendant below, appellee.

*William F. Taylor,* of Young, Conaway, Stargatt & Taylor, and *Theodore F. Sandstrom,* of Killoran & Van Brunt, for third-party defendants below, appellees.

Supreme Court of the State of Delaware, No. 60, 1965.

HERRMANN, Justice.

The determinative question on this appeal, in the view we take of the case, is whether the trial court erred in directing a jury verdict in favor of the defendant and third-party defendants on the ground, *inter alia,* that under the plaintiff's evidence he was guilty of contributory negligence as a matter of law.

This negligence action was brought against the defendant Petrillo Bros., Inc. (hereinafter "Petrillo") for injuries suffered by the minor Thomas O'Hara (herein referred to as the plaintiff, although the action is brought by his next friend as plaintiff) as the result of the explosion of a blasting cap. Petrillo was in the business of quarrying stone. The plaintiff's action is based upon Petrillo's alleged failure to exercise due care and caution in the storage of blasting caps. Petrillo named as third-party defendants Wayne Horner (hereinafter (Wayne") and Harry Hitchens (hereinafter "Harry"), friends and companions of the plaintiff.

Accepting the plaintiff's evidence for present purposes:

On a Sunday at about noon, Wayne, then 11, and Harry, then 12, entered Petrillo's quarry premises through openings in the fence, as

they had several times before, searching for pigeons which they knew nested in the open garage building. The boys found a box of blasting caps in an unlocked cabinet, and a length of fuse and some matches nearby. After firing several of the caps in the quarry, the boys divided the remaining caps between them and left Petrillo's premises. Later, Wayne went to a nearby bowling alley, and took several of the caps with him. While at the bowling alley, Wayne exploded several caps and heard Harry exploding some of his in a nearby wooded area. Wayne joined Harry and proceeded to explode all the caps he had with him. Harry and Wayne then parted.

The plaintiff met Harry as he was leaving the wooded area. At the time, the plaintiff was past 14 years of age, doing very well in the ninth grade at school, and was a "smart little boy" according to his mother. He had had home and scouting training with respect to the hazards of matches and fires. The plaintiff had been at the bowling alley and heard "loud bangs" coming from the wooded area where Harry and Wayne were exploding caps. Curious to know what the noises were, the plaintiff entered the wooded area, met Harry and asked him what was happening. Although Harry did not reply, the plaintiff saw that he was holding a box and asked, "Can I have a couple?" Harry gave the plaintiff two blasting caps from the box and the boys parted. The plaintiff did not know that he had been given blasting caps; based upon some experience he had had with rifles and rifle ammunition, he thought he had rifle cartridges without the lead bullet tops. He knew that a fired cartridge has nicks and dents around the base and, seeing no such marks on the objects handed him by Harry, he concluded that they might be live cartridges. He decided to find out. Earlier, the plaintiff had been building model airplanes with a friend. He borrowed one of the models and went into the woods alone to "blow it up." He had had some experience with older boys in exploding large fire crackers and in making and detonating homemade bombs. The plaintiff first put one of the caps into the model plane with a fuse made of paper but did not light the fuse. He then placed the second cap in the bank of a ditch, lit a match, dropped it into the cap, ran across the ditch, and hid behind a tree so that he would not be hurt by the explosion. When nothing occurred after about a minute, the plaintiff returned and,

seeing no smoke and thinking it was a dud cartridge, leaned down to pick it up. As he did so, the cap exploded in his face and he was seriously injured.

At the close of the plaintiff's case in the jury trial, the Superior Court directed a verdict in favor of the defendant and the third-party defendants on the basis of the facts shown by the plaintiff's evidence. The plaintiff appeals.

The ruling of the Trial Court and the contentions of the parties involve various issues of negligence, contributory negligence and proximate cause; but we confine ourselves to the issue of contributory negligence because our conclusions as to that issue make the other matters academic.

The ultimate question before us is the usual one when a verdict has been directed in favor of the defendant in a negligence action: Under any reasonable view of the evidence, would the jury have been justified in returning a verdict in favor of the plaintiff and against the defendant? *Ebersole v. Lowengrub*, 208 A.2d 495 (Del. 1965).

In our judgment, the only justifiable inference which can be reasonably drawn from the above stated facts is that the plaintiff knew that danger of injury was involved in exploding the object which he thought was a cartridge. No other inference could be reasonably and justifiably drawn from the admitted fact that he ran quite a distance and hid behind a tree to avoid injury when he thought that the explosion was about to occur. Thus, knowing that he possessed some kind of explosive which could be dangerous to his person, the plaintiff exposed himself to the danger nevertheless.

Considering the plaintiff's maturity and capacity, his ability to understand and appreciate the danger, his familiarity with rifle shells, fireworks and homemade bombs, together with all of the other circumstances of the accident, we are satisfied, from the plaintiff's own version of the facts, that reasonable minds could draw but one inference therefrom: the plaintiff did not exercise ordinary

care; i.e., that degree of care and caution which reasonably prudent boys of the same age and intelligence would have exercised under like circumstances. It follows that the plaintiff must be held guilty of contributory negligence as a matter of law. *Pokoyski v. McDermott,* 3 Storey 253, 167 A.2d 742 (1961). And the plaintiff is not aided by the fact that he did not know a blasting cap from a rifle shell; for the legal consequences of his course of conduct are not changed by his failure to anticipate the exact manner in which the harm was to come to him from the dangerous instrumentality to which he exposed himself. Compare *Luttrell v. Carolina Mineral Co.,* 220 N.C. 782, 18 S.E.2d 412 (1942); *Moore v. Order Minor Conventuals* (4th Cir. 1959) 267 F.2d 296.

The plaintiff relies upon *Boyd v. Hammond,* 187 A.2d 413 (Del. 1963); *Linthicum v. Truitt,* 2 Boyce 338, 80 A. 245 (1911) and *Weldon v. Philadelphia,* W. & B. R. R. Co., 2 Pennew. 1, 43 A. 156 (1899). We find nothing in those cases inconsistent with the views expressed here.

Accordingly, we conclude that the direction of a verdict in favor of the defendant and third-party defendants was proper on the ground of contributory negligence. In view of this conclusion, we need not pass upon the parties' other contentions.

The judgment below is affirmed.