Josefa BURGOS, as Next Friend
of Tiffany M. Scott Burgos,
Plaintiff Below, Appellant,

v.

Robert HICKOK, Jr., M.D., Defendant
Below, Appellee.

No. 269, 1996.

Supreme Court of Delaware.

Submitted: April 22, 1997.
Decided: June 19, 1997.

Bayard Marin, Wilmington, for Appellant.

Mason E. Turner, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH and HARTNETT, JJ.

WALSH, Justice:

This is an appeal from a two-pronged ruling of the Superior Court granting a new trial and later a motion for summary judgment in favor of a physician in a medical malpractice action. The plaintiff-appellant, Josefa Burgos ("Burgos") acting as Next Friend of her infant minor daughter, Tiffany, initiated a malpractice action against, defendant-appellee, Dr. Robert Hickok, Jr. ("Dr. Hickok") for recovery of injuries sustained by her daughter during childbirth. The matter eventually proceeded to trial and resulted in a jury award of $140,000 against Dr. Hickok. Upon defendant's motion, the trial judge granted a new trial on the ground that plaintiff had failed to establish, through expert testimony, a causal link between Dr. Hickok's deviation from the standard of care and Tiffany's injury.

Before the matter could proceed to retrial, a second Superior Court judge, at Dr. Hickok's request, required plaintiff to make a proffer of what additional evidence she intended to rely upon to remedy the deficiency that prompted the grant of a new trial. When plaintiff indicated she intended to rely upon the proof of causation presented at the first trial, the Superior Court granted "judgment on the record" in favor of Dr. Hickok, ruling, in effect, that it was bound by the trial judge's determination of lack of causation on the same record.

We conclude that the trial judge's decision to grant a new trial based on plaintiff's failure to establish causation was posited on a material misunderstanding as to the nature and cause of Tiffany's injuries. In our view, the jury verdict in favor of the plaintiff should not have been disturbed because sufficient medical testimony was presented to establish the essential element of causation. Since we conclude as a matter of law that the granting of a new trial was reversible error, we need not address the plaintiff's claim of error directed to the rulings which granted judgment in favor of Dr. Hickok.

**I**

We view the record from a perspective most favorable to the jury's verdict. *See Storey v. Camper*, Del.Supr., 401 A.2d 458, 465 (1979) (a jury verdict should not be disturbed unless it is against the great weight of the evidence). On January 14, 1986, Tiffany Burgos was born at St. Francis Hospital in Wilmington with Dr. Hickok as the attending obstetrician. During the birthing process a complication arose when Tiffany's left shoulder became lodged in the birth canal, a condition known as shoulder dystocia. In an attempt to overcome the dystocia and dislodge the infant's shoulder, Dr. Hickok undertook certain procedures. These included an episiotomy (a cutting of the tissue to enlarge the opening of the birth canal), a rotation of the baby's shoulder, the application of suprapubic pressure (pressure applied above the front of the pelvis) and strong fundal pressure (pressure applied to the mother's abdomen).

Shortly after the birth, Dr. Hickok made a record of the procedures used to dislodge the shoulder and noted that Tiffany had poor motion of her left arm. Because of this weakness, Tiffany was referred to Dr. Charles Bean, a board certified physician in pediatrics and neurology, with special competence in child neurology. Upon examination, Dr. Bean diagnosed Tiffany as suffering from left Erb's palsy and left Klumpke's palsy. Both Erb's palsy and Klumpke's palsy refer

to an injury to the brachial plexus, or in common parlance, damage to the nerves which emanate from the neck down into the arm. Specifically, Erb's palsy refers to an injury to the upper portion of the brachial plexus at the Cervical 5 and Cervical 6 nerve roots, while Klumpke's palsy describes an injury to the lower part of the brachial plexus around the Cervical 8 nerve roots. Tiffany's injuries are permanent, and she will never be able to lift her arm above her head or to extend it in certain directions.

Burgos' complaint alleged that the manipulations and procedures performed by Dr. Hickok to overcome the shoulder dystocia were the cause of Tiffany's injuries. At trial, plaintiff proffered the testimony of several medical experts. Dr. Bean testified regarding the general nature of brachial plexus injuries as well as the specific injury suffered by Tiffany. In addition, Dr. Richard Bowen, a board certified orthopedist and chairman of the Orthopedic Department at the A.I. DuPont Institute, testified that Tiffany's injury was a form of birth palsy.

Plaintiff also presented the testimony of Dr. Marvin A. Krane ("Dr. Krane"), an obstetrician/gynecologist, who opined that, under the circumstances presented, Dr. Hickok's performance during the delivery of Tiffany fell below the standard of care expected of an obstetrician. Specifically, Dr. Krane stated that it is never appropriate to apply strong fundal pressure prior to dislodging the baby's shoulder. He further testified that bruising on the baby's face and the existence of the brachial plexus injury, indicate the use of forceful grabbing and lateral flexion of the baby's head (bending or turning the head to one side). Finally, Dr. Krane testified that, in terms of medical probability, it was more probable than not that fundal pressure and lateral flexion of the head caused Tiffany's brachial plexus injury.

Defendant's expert Dr. Jan Schneider testified that there was no way to determine when, in the course of delivery, Tiffany's injury occurred. Dr. Schneider was of the view that the injury could have occurred at the time of the initial impaction of the shoulder or as a result of suprapubic pressure, the twisting maneuver or the attempted delivery of the posterior arm, all of which Dr. Krane testified were performed within the applicable standard of care.

Neither at the conclusion of plaintiff's case, nor at any time thereafter, did Dr. Hickok seek judgment as a matter of law pursuant to Superior Court Civil Rule 50(a). The Superior Court submitted the issues of breach of standard of care, causation and damages to the jury under appropriate instructions. On December 17, 1993, the jury returned a verdict in plaintiff's favor and fixed damages in the amount of $140,000.

On December 29, 1993, Dr. Hickok filed a motion for a new trial pursuant to Superior Court Civil Rule 59, claiming, *inter alia*, that plaintiff had failed to establish the essential element of causation and therefore the verdict was "against the great weight of the evidence in relation to the law, and as a consequence, a verdict for the plaintiff is a miscarriage of justice." On February 19, 1994, the trial judge granted the motion for a new trial on the ground that plaintiff had failed to establish that Dr. Hickok's negligence caused the Erb's palsy. The court noted that "[a]ll injuries to the brachial plexus do not cause Erb's palsy." "Thus, the question here is: did the injuries to the brachial plexus relied on by plaintiff cause Tiffany's palsy?" The court ruled that plaintiff had not met her obligation to present expert testimony as to causation of the Erb's palsy.

The case was thereafter assigned to a different Superior Court judge and a new trial was scheduled to begin on May 28, 1996. In anticipation of the new trial, counsel for Dr. Hickok requested that plaintiff update her discovery responses by listing any additional expert testimony or evidence that she planned to use in establishing causation. Counsel for plaintiff replied that she intended to rely on the same expert witnesses who testified at the first trial. Shortly thereafter, plaintiff filed a motion *in limine* seeking to limit the scope of the new trial to the issue of causation only, since the trial judge had concluded that sufficient evidence had been presented to sustain the jury's findings that Dr. Hickok operated below the standard of care.

Dr. Hickok responded to the motion *in limine* by requesting that the court enter an order granting judgment in his favor. Since the plaintiff did not intend to offer new evidence on the causation issue, under the law of the case, her evidence could not support a verdict in plaintiff's favor. Judge Herlihy, upon consideration of the motions, found appellant's causation evidence to be deficient in the same manner as before. Accordingly, the court granted Dr. Hickok's motion and entered judgment in favor of the defense.

## II

We begin our review of this appeal by addressing plaintiff's claim that Dr. Hickok's failure to move for a directed verdict, prior to the case being submitted to the jury, was a procedural bar to the trial judge's grant of a motion for a new trial in favor of the losing party on an issue of law. In a civil trial, an unsuccessful party is afforded two methods through which to seek relief following an adverse jury verdict. The losing party may renew a motion for judgment as a matter of law under Super.Ct.Civ.R. 50(b) or may move for a new trial pursuant to Super.Ct.Civ.R. 59. Provided a proper procedural basis is established, the two motions may be sought alternatively.

■ Although in this case the losing party pursued only a Rule 59 motion, it is instructive to analyze the impact of both forms of post verdict relief in the context of the unusual circumstances of this case. Rule 50(b) provides a mechanism that allows the non-prevailing party to have the verdict, or any judgment entered thereon, set aside and secure judgment in his favor. *McCarthy v. The Mayor of Wilmington*, Del.Super., 100 A.2d 739, 740 (1953). The grant of a Rule 50(b) motion does not result in a new trial, rather, a verdict is entered in favor of the moving party based upon the same evidence

that the verdict for the non-moving party was rendered by the jury. *Id.* Because the drastic nature of this relief impacts upon the role of the jury, courts have exercised this power with caution. Whether directed at the conclusion of the plaintiff's case, or post-trial under Rule 50(b), the entry of a verdict in favor of the defendant is appropriate only when, under the evidence presented by the plaintiff, reasonable minds could draw but one inference and that inference is that a verdict favorable to the plaintiff is not justified. *O'Hara v. Petrillo Bros., Inc.*, Del. Supr., 216 A.2d 672, 674 (1966).

■ As Burgos has correctly pointed out in this appeal, the trial court's ability to entertain post verdict relief under Rule 50(b), is limited by a procedural prerequisite. Before a party may seek relief under Rule 50(b) it must first make motion for judgment as a matter of law under Rule 50(a). This motion must be made before the case is submitted to the jury.[1] *Peters v. Gelb*, Del.Supr., 314 A.2d 901, 904 (1973). In effect, when a motion for judgment as a matter of law at the close of all the evidence is not granted, the court is deemed to have submitted the issues to the jury subject to a later determination of the legal questions raised by the motion. Super.Ct.Civ.R. 50(b). In this case, Dr. Hickok did not preserve his right to obtain post verdict relief under Rule 50(b) because he failed, at the close of all the evidence, to move for judgment as a matter of law pursuant to Rule 50(a).

■ The failure to make a Rule 50(a) motion does not, however, preclude a losing party from seeking post verdict relief in the form of a new trial under Rule 59. A motion for judgment notwithstanding the verdict and a motion for a new trial are not interchangeable since they serve entirely different purposes. *Peters*, 314 A.2d at 904. When passing on a motion for judgment as a matter of

1. Although, for reasons explained later in our opinion, we are not called upon to review the Superior Court's decision to enter judgment in favor of Dr. Hickok, we note that this ruling was the functional equivalent of the granting of a motion for judgment notwithstanding the verdict under Superior Court Rule 50(b). Procedurally, this motion was made following a favorable jury verdict for the plaintiff and resulted in a judg-

ment being granted in defendant's favor. In the unique posture of this case, the Superior Court should not have granted Dr. Hickok's motion in the absence of a Rule 50(a) motion for a directed verdict during trial. The trial judge's grant of a new trial only afforded Dr. Hickok the opportunity to reassert his defense, it did not, *ipso facto*, grant him judgment as a matter of law.

law, the court does not weigh evidence but rather, views the evidence in a light most favorable to the non-moving party and, drawing all reasonable inferences therefrom, determines if a verdict may be found for the party having the burden. *McCloskey v. McKelvey,* Del.Super., 174 A.2d 691, 693 (1961). In contrast, when considering a motion for a new trial, the court weighs the evidence in order to determine if the verdict is one which a reasonably prudent jury would have reached. *Id.*

█ Barring exceptional circumstances, the trial judge should set aside a jury verdict pursuant to a Rule 59 motion only when the verdict is manifestly and palpably against the weight of the evidence, or for some reason, justice would miscarry if the verdict were allowed to stand. *Storey,* 401 A.2d at 465. This standard gives recognition to the exclusive province of the jury as established by the Delaware Constitution, while preserving the separate common law function of the motion for a new trial where all of the evidence can be reviewed from the unique viewpoint of the trial judge. *Id.* A trial judge's determination to grant a new trial is accorded due deference by this Court and will not be disturbed so long as the decision is not unreasonable or capricious. *See Chavin v. Cope,* Del.Supr., 243 A.2d 694, 697 (1968).

█ Turning to the trial court's ruling granting a new trial in this case, we note that the court granted Dr. Hickok's motion for a new trial based on the plaintiff's alleged failure to establish causation. The court phrased the causation burden as follows: "[i]n short, plaintiff's obligation was to present expert medical testimony as to causation of the Erb's palsy." The court, relying on 18 *Del.C.* § 6853, found that the plaintiff did establish Dr. Hickok's deviation from the standard of care but concluded that the expert medical testimony fell short of showing "causation of the alleged personal injury."[2] It was upon this perceived deficiency of proof that the trial court posited its decision to grant a new trial.

With deference to the trial court, we conclude that the decision to grant a new trial was premised on a misunderstanding of the medical evidence presented at trial. It is clear from the record that the trial judge mistakenly considered the relationship between a brachial plexus injury and Erb's palsy to be one of cause and effect, as opposed to descriptive terms for the same injury. In essence, the trial judge considered Erb's palsy to be an injury which can sometimes result from an injury to the brachial plexus, when, in fact, Erb's palsy is merely a *subset* of brachial plexus injuries. This misunderstanding is evidenced by the trial court's opinion when he states, "[a]ll injuries to the brachial plexus do not cause Erb's palsy." "Thus the question here is: Did the injuries to the brachial plexus relied on by plaintiff cause Tiffany's palsy?"

Ironically the trial judge was correct in stating that all injuries to the brachial plexus do not *cause* Erb's palsy. In fact, none of these injuries *causes* Erb's palsy. Rather, some injuries to the brachial plexus are *called* Erb's palsy, and some injuries to the brachial plexus are *called* Klumpke's palsy. It happens in this case that Tiffany was diagnosed by Dr. Bean as suffering from both Erb's palsy and Klumpke's palsy. Dr. Bean further testified that a majority of brachial plexus injuries are caused by traction injuries during the birth process. This conclusion was supported by Dr. Krane's testimony when he stated that, in terms of medical probability, the flexion of the head and fundal pressure caused Tiffany's brachial plexus injury. Therefore, once the appellant established a breach in the standard of care during delivery, Dr. Krane's and Dr. Bean's testimony provided a sufficient basis from which the jury could conclude that Tiffany's brachial plexus injury was caused by Dr. Hickok's negligence.

Based on the foregoing analysis, we find that sufficient evidence was produced at trial to support the jury's determination that Dr.

---

2. 18 *Del.C.* § 6853 provides:
   [n]o liability shall be based upon asserted negligence unless expert medical testimony is presented as to the alleged deviation from the applicable standard of care in the specific circumstances of the case and *as to the causation of the alleged personal injury . . . .* (Emphasis added).

Hickok breached the standard of care and this negligence was the cause of Tiffany's injury. *Storey,* 401 A.2d at 465. For this reason, the trial judge's vacating of the jury award and granting of Dr. Hickok's motion for a new trial was an abuse of discretion. Having determined the jury verdict should not have been disturbed, appellant's remaining two issues on appeal, (i) that the trial court erred in prohibiting certain expert medical testimony and (ii) that the second judge impermissibly granted judgment in defendant's favor are deemed moot.

The judgment of the Superior Court is REVERSED and this matter REMANDED for the entry of judgment for plaintiff in the amount of the jury award.