IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION: | ) |
| | ) |
| PAULA KNECHT, Individually, and as | ) |
| Independent Executrix of the estate of, | ) |
| LARRY W. KNECHT, deceased, | ) |
| | ) C.A. No. N14C-08-164 ASB |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |

Submitted: October 15, 2018
Decided: January 31, 2019

*Upon Defendant Ford Motor Company's Renewed Motion for Judgment as a Matter of
Law Under Rule 50(b) or, in the Alternative, a New Trial*
**DENIED.**

*Upon Defendant Ford Motor Company's Motion for a New Trial,
or in the Alternative, Remittitur*
**DENIED.**

**MEMORANDUM OPINION AND ORDER**

Adam Balick, Esquire, Michael Collins Smith, Esquire, Patrick J. Smith, Esquire, Balick &
Balick, LLC, 711 King Street, Wilmington, Delaware 19801; Bartholomew J. Dalton,
Esquire, Ipek K. Medford, Esquire, Andrew C. Dalton, Esquire, Michael C. Dalton, Esquire,
Dalton & Associates, Cool Spring Meeting House, 1106 West Tenth Street, Wilmington,
Delaware 19806; Danny R. Kraft, Esquire, Weitz & Luxenberg, P.C., 700 Broadway, New
York, New York 10003, Of Counsel; Attorneys for Plaintiff, Paula Knecht, Individually, and
as Independent Executrix of the estate of Larry Knecht, deceased.

Christian J. Singewald, Esquire, Rochelle L. Gumapac, Esquire, White and Williams LLP,

Courthouse Square, 600 N. King Street, Suite 800, Wilmington, Delaware 19801, Attorneys for Defendant Ford Motor Company.

**WHARTON, J.**

# I.  INTRODUCTION

Plaintiff Paula Knecht is the widow of Larry Knecht, who died at the age of 71 from mesothelioma, an incurable asbestos related disease. During most of his working life, Larry Knecht was an automobile mechanic, owning and operating Knecht Automotive in Los Alamos, New Mexico. In her lawsuit against Ford Motor Company, Mrs. Knecht brought claims of negligence and strict liability, alleging that Mr. Knecht was exposed to asbestos from working with Ford's asbestos-containing brakes and clutches. She sought compensatory and punitive damages. The case went to trial on May 13, 2018. After 16 days of testimony and argument and three days of deliberation, the jury returned its verdict on June 8, 2018. The jury awarded Mrs. Knecht $40.625 million in compensatory damages, for which it found Ford 20% responsible. It also awarded her $1 million in punitive damages. In total Ford's liability to Mr. Knecht was $9.125 million.

Pending before the Court are two motions filed by Ford. The first renews Ford's Motion for Judgment as a Matter of Law Under Rule 50(b), previously denied by the Court at the end of Plaintiff's case and again at the conclusion of the evidence.[1] Ford raises six arguments in the motion, primarily focusing on issues related to causation and sufficiency of evidence. Alternatively, Ford seeks a new trial. The second motion separately moves for a new trial, or alternatively, remittitur.[2] In this second motion, Ford argues that the jury's

---

[1] D.I. 360.
[2] D.I. 363.

3

verdict was irreconcilably inconsistent and the amount of damages awarded shocks the conscience. Because the Court is not persuaded that its previous rulings on Ford's motions seeking judgment as a matter of law were incorrect, Ford's renewed motion is **DENIED.** Further, because the Court does not find the jury's verdict to be irreconcilably inconsistent, nor does it find the damages award excessive, the Motion for a New Trial, or in the Alternative, Remittitur, also is **DENIED.**

## II. FACTUAL AND PROCEDURAL CONTEXT

Larry Knecht was diagnosed with mesothelioma in May of 2014.[3] He and his wife Paula brought this lawsuit on August 20, 2014.[4] On December 16, 2014, he died of that disease, just shy of his 72nd birthday.[5] After he died, Paula Knecht, as the independent executrix of his estate, was substituted as a party plaintiff for Larry Knecht in an Amended Complaint.[6]

Larry Knecht lived the vast majority of his life in New Mexico, primarily in Los Alamos.[7] He spent most of his working life as an auto mechanic and owner of Knecht Automotive in Los Alamos.[8] The Amended Complaint alleged that as an auto mechanic Mr. Knecht was exposed to asbestos from asbestos-containing products from a substantial

---

[3] Compl., D.I. 1.
[4] Compl., D.I. 1.
[5] Amend. Compl., D.I. 109.
[6] Amend. Compl., D.I. 109.
[7] *Id.*
[8] *Id.*

4

number of automotive products manufacturers, and, as a result of that exposure, developed mesothelioma and died.[9] The Court ordered that New Mexico law was applicable to substantive law issues.[10]

Dr. Mark Ellis Ginsburg ("Dr. Ginsburg") served as Plaintiff's causation expert. Dr. Ginsburg authored a report dated April 15, 2015 which contained the following conclusion:

> It is my opinion, to a reasonable degree of medical certainty, all of the exposures to asbestos containing products referenced in the occupational history section of my report for which respirable asbestos fibers were released into the breathing zone of plaintiff, above the background levels of asbestos, contributed to a cumulative dose of asbestos for Mr. Knecht and therefore each such product was a substantial factor in contributing to Mr. Knecht's malignant mesothelioma and death. Each such product for which exposure can be shown was a cause of said disease.[11]

On April 18, Ford moved *in limine* to exclude Dr. Ginsburg's opinions on *Daubert* grounds,[12] which Plaintiff opposed.[13] After Dr. Ginsburg's deposition on April 25th, Ford supplemented its motion *in limine* on May 7th on the grounds that: (1) New Mexico law does not follow substantial factor causation; (2) Dr. Ginsburg cannot say which respirable fibers were released into Mr. Knecht's breathing zone; and (3) Dr. Ginsburg does not know the background levels of asbestos, and, as a result cannot say what exposures exceeded

---

[9] *Id.*

[10] D.I. 176.

[11] Def.'s Mot. *in Limine* to Preclude the Opinions of Dr. Ginsburg, at Ex. D, D.I. 265.

[12] *Id.*

[13] Plf.'s Opp. to Def.'s Mot. *in Limine* to Preclude the Opinions of Dr. Mark E. Ginsburg, D.I. 288.

5

background levels.[14] Further, Ford sought to preclude Dr. Ginsburg from testifying about epidemiology since he did not have the requisite qualifications.[15] Plaintiff responded to Ford's supplemental submission on May 9th.[16] At a pretrial motions hearing on May 10th, the Court deferred ruling on the motion until after Dr. Ginsburg was examined on *voir dire*.

Prior to testifying before the jury, Dr. Ginsburg was examined on *voir dire* by both parties and the Court.[17] After hearing argument, the Court determined that Dr. Ginsburg's opinions satisfied New Mexico's causation standard and were admissible.[18] At the conclusion of Plaintiff's case, Ford moved for judgment as a matter of law under Rule 50(a).[19] The brief in support of the motion presented six arguments: (1) Plaintiff presented insufficient evidence that Mr. Knecht was exposed to asbestos-containing Ford products; (2) Plaintiff failed to satisfy New Mexico's causation standard; (3) even if New Mexico would apply a substantial contributing factor standard, Plaintiff failed to meet that standard; (4) Plaintiff could not show Ford's warnings were inadequate without expert testimony; (5) to the extent Plaintiff asserted a design defect theory of liability, Ford was entitled to judgment as a matter of law; and (6) Plaintiff failed to introduce sufficient evidence that Ford acted maliciously, willfully, wantonly, or fraudulently to support its punitive damages claim.[20]

---

[14] Def.'s Mot. *in Limine*, D.I. 265.
[15] *Id.*
[16] D.I. 308.
[17] 5/16 Tr. 105-162.
[18] *Id.*, at 192-94.
[19] D.I. 336.
[20] *Id.*

6

With the exception of Ford's design defect argument, which Plaintiff conceded, the Court denied the motion.[21] Ford renewed its motion at the conclusion of all of the evidence on the same grounds, and again, the Court denied it.[22]

The Court's instructions to the jury titled "Causation," "Causation for Product Defect," "Causation Relating to Warnings," and "Duty to of Supplier to Warn," and the language of the verdict sheet consistent with those instructions all are relevant to these motions. As to "Causation'" the Court instructed the jury:

> An act or omission is a "cause" of harm if it contributes to bringing about the harm, and if harm would not have occurred without it. It need not be the only explanation for the harm, nor the reason that is nearest in time and place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause," the act or omission, nonetheless, must be reasonably connected as a significant link to the harm.[23]

The Court's "Causation for Product Defect" instruction stated in similar language:

> A product that is defective because it lacks an adequate warning is a "cause" of harm if it contributes to bringing about the harm, and if the harm would not have occurred without it. It need not be the only explanation for the harm, nor the reason that is nearest in time or place. It is sufficient if it occurs in combination with some other cause to produce the result. To be a "cause," the defective product must be reasonably connected as a significant link  to the harm.[24]

The Court's next instruction, "Causation Related to Warnings," read:

---

[21] 5/25 Tr. 67-76.
[22] 6/5 Tr. 161.
[23] Jury Instructions at 27, D.I. 352.
[24] *Id.,* at 36.

7

> If, in light of all the circumstances of this case, an adequate warning or adequate directions for use would have been noticed and acted upon to guard against the danger, a failure to give an adequate warning or adequate directions for use is a cause of injury.[25]

The jury was instructed on "Duty of Supplier to Warn" in part as follows:

> A supplier must use ordinary care to warn of a risk of injury. However, there is no duty to warn of a risk unknown to the supplier, unless, by the use of ordinary care, the supplier should have known of the risk.

> Under Plaintiff's claim of "products liability," a product presents an unreasonable risk of injury if put on the market without waning of a risk which could be avoided by the giving of an adequate warning.

> The supplier has no duty to warn of risks which it can reasonably expect to be obvious or known to foreseeable users of the product.[26]

When the Court instructed the jury on compensatory damages, it gave the New Mexico pattern instruction proposed by Ford.[27] The jury was instructed to award a "fair and just" amount of money "for the life of Larry Knecht" including compensation for: (1) Mr. Knecht's pain and suffering from the time of his injury until his death; (2) the value of Mr. Knecht's life apart from his earning capacity; (3) mitigating and aggravating circumstances relating to the wrongful acts; (4) Paula Knecht's emotional distress caused by the loss of

---

[25] *Id.,* at 37.

[26] *Id.,* at 31.

[27] *See* Ford's Third Amended Proposed Jury Instructions at 44,45, D.I. 340; Jury Instructions, at 40,41, D.I. 352.

companionship with Mr. Knecht; and (5) any monetary loss suffered by Mr. Knecht's beneficiaries.[28] In fixing an amount of compensatory damages, the jury was told:

> No fixed standard exists for determining fair and just damages. You must use your judgment to decide a reasonable amount. Your verdict must be based on evidence, not on speculation, guess, or conjecture. You must not permit the amount of damages to be influenced by sympathy or prejudice.[29]

The Court's punitive damages instruction also tracked New Mexico's pattern instruction and Ford's proposed instruction.[30]

A nine question verdict sheet was submitted to the jury. When it returned its verdict, on the liability questions the jury found that: (1) Larry Knecht was exposed to Ford's asbestos-containing products (Question 1); (2) Ford negligently failed to warn Mr. Knecht of risks inherent in the use of its products (Question 2); (3) Ford's negligent failure to warn was not a cause of Mr. Knecht's mesothelioma in the Mr. Knecht would have noticed and acted upon an adequate warning (Question 3); (4) a Ford friction product was defective because it lacked a warning of a risk which could be avoided by the giving of an adequate warning (Question 4); and (5) the defect in Ford's friction product caused Mr. Knecht's mesothelioma (Question 5).[31] The jury awarded a total of $40.625 million in compensatory

---

[28] Jury Instructions, at 40,41, D.I. 352.

[29] *Id.,* at 41.

[30] Ford's Third Amended Proposed Jury Instructions, at 48,49 D.I. 340; Jury Instructions, at 43,44, D.I. 352.

[31] Verdict Sheet, D.I. 353.

damages (Question 6), for which Ford was 20% responsible (Question 7).[32] Finally, the jury found that Ford was responsible for $1 million in punitive damages (Questions 8 and 9).[33]

After trial, Ford filed four motions – the two the Court addresses here – and two others which were unopposed. The two unopposed motions sought to amend the judgment to conform to the verdict,[34] and to stay execution of the judgment pending resolution of the other post-verdict motions.[35] The former sought to reduce the judgment against Ford to reflect the jury's determination that Ford was liable for 20% of the compensatory damages. The latter is self-explanatory. The Court granted both motions.[36]

### III. FORD'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(B) OR, IN THE ALTERNATIVE A NEW TRIAL

#### A. The Parties' Contentions

Ford's motion raises six arguments that closely track those raised in its previously denied motions, but does not exactly replicate them. Ford's first argument is a variation on its original argument on causation in that it focuses on the sufficiency of Plaintiff's evidence as it relates to the jury instruction given by the Court on causation. Ford argues that although Plaintiff agreed to the New Mexico causation instruction given by the Court, which required

---

[32] *Id.*

[33] *Id.*

[34] Def.'s Mot. to Alter or Ament Judgment to Conform to Jury's Verdict, D.I. 362.

[35] Def.'s Mot. to Stay Execution of Judgment Pending Disposition of Post-Judgment Mots. Under Rules 50 and 59, D.I. 361.

[36] D.I. 369, 368.

the Plaintiff to prove "but for" causation, it failed to meet that standard. The remaining arguments mirror Ford's initial arguments that: (1) even if New Mexico applied a substantial factor causation standard, Ford failed to meet that standard; (2) the Court should have excluded Dr. Ginsburg's testimony; (3) there was insufficient evidence that Larry Knecht was exposed to Ford's asbestos–containing products; (4) expert testimony was required to show that Ford's warnings were inadequate; and (5) Plaintiff was not entitled to punitive damages.

The Court discusses only the first question presented here – whether the Plaintiff failed to present sufficient evidence to meet the New Mexico causation standard as instructed by the Court. The remaining arguments have been presented to the Court twice before. After careful consideration, the Court has twice rejected them. The Court adheres to those decisions for the same reasons it articulated previously.[37]

## B. Standard and Scope of Review

Although motions for a new trial under Superior Court Civil Rule 59 may be joined with renewed motions for judgment as a matter of law under Rule 50(b), different standards apply. Motions for judgment as a matter of law are governed by Superior Court Civil Rule 50. If there is no legally sufficient evidentiary basis for a jury to find for a party on an issue, the Court may determine that issue against that party and may grant judgment as a matter of

---

[37] These arguments are similarly unpersuasive under the differing standard for considering motions for a new trial.

law against that party on that issue.[38] Whenever such a motion is made and denied at the close of the evidence, it may be renewed after trial.[39] When determining a motion for judgment as a matter of law, the Court does not weigh the evidence, but rather views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-moving party and determines if a verdict may be found for the party having the burden of proof.[40] In contrast, when considering a motion for a new trial, the Court weighs the evidence in order to determine if the verdict is one which a reasonably prudent jury would have reached.[41]

## C. Discussion

Ford does not challenge the Court's causation instruction.[42] Rather, Ford argues that the causation instruction, to which Plaintiff agreed, contained a "but for" element that Plaintiff failed to prove through Dr. Ginsburg, her only causation expert.[43] Thus, the question before the Court on Ford's Renewed Motion for Judgment as a Matter of Law Under Rule 50(b) is whether, when viewing the evidence and all reasonable inferences drawn from the evidence in the light most favorable to Plaintiff, she satisfied New Mexico's causation standard as the jury was instructed by the Court. As to the alternative Motion for a New

---

[38] Super. Ct. Civ. R. 50(a).

[39] Super Ct. Civ. R. 50(b).

[40] *Burgos v. Hickok,* 695 A. 2d 1141, 1144-45 (Del. 1997).

[41] *Id.*

[42] Def.'s Op. Br. Mot J. as Matter of Law, at 7, D.I.

[43] *Id.,* at 10.

Trial, the Court must determine whether, when weighing the evidence on causation, that evidence was sufficient that a reasonably prudent jury would have would found causation under the New Mexico standard as the jury was instructed. After carefully considering these questions, the Court finds that the motions must be denied.

When Ford first moved for judgment as a matter of law at the close of Plaintiff's case, the Court had not finalized its causation instruction. Argument on the causation portion of the motion followed *voir dire* of Dr. Ginsburg and incorporated an extended discussion on Ford's attempt to exclude Dr. Ginsburg's testimony.[44] That discussion included discussion of New Mexico's pattern causation instruction, and when the Court ruled initially that Dr. Ginsburg's testimony was admissible, it considered the New Mexico pattern instruction in its ruling.[45] The Court also considered New Mexico's instruction when it denied Ford's Motion for Judgment as a Matter of Law.[46] When Ford briefly renewed its motion at the conclusion of all of the evidence, and the Court affirmed its previous ruling.[47] Ultimately, the Court gave the New Mexico instruction. So, although the renewed motion is fashioned as one asserting that Plaintiff's proof was insufficient to meet the requirements of the instruction as given, when the Court denied the motions it did so in the context of the instruction that actually was given. What that means is that the renewed motion is not

---

[44] 5/25 Tr. 40-41, 51.
[45] 5/16 Tr. 192.
[46] 5/25 Tr. 71-73.
[47] 6/5 Tr. 161.

13

different from the previous motions, and the Court denies it for the same reasons it denied the earlier iterations.

When considering and weighing the testimony of Larry Knecht on the question of exposure, of Dr. Ginsburg on the question of causation, and of Dr. Barry Castleman, Plaintiff's state of the art expert, and Ford's corporate representative Matthew Fyie on the question of notice, it is clear to the Court that a reasonable jury would have returned the verdict this jury returned. Accordingly, the Court denies the Motion for a New Trial.

## IV. FORD'S MOTION FOR A NEW TRIAL, OR, IN THE ALTERNATIVE, REMITTUR

### A. The Parties' Contentions

Ford's position in support of its entitlement to a new trial is straightforward. It argues that the jury's causation findings are inconsistent and irreconcilable in that the jury found in answering Questions 3 and 5 that Ford's failure to provide an adequate warning both did and did not cause Mr. Knecht's mesothelioma.[48] Ford also argues that it is entitled to a new trial, or alternatively, remittitur on the grounds that the amount of the verdict was objectively excessive, Plaintiff's counsel improperly incited bias, passion, or prejudice throughout his closing argument, and the admission of cumulative evidence of notice inflamed the jury and likely impacted the verdict.[49]

For her part, Plaintiff argues that by agreeing to the form of the verdict sheet Ford has

---

[48] Def.'s Br. Mot. New Tr., at 4-13, D.I. 363.
[49] *Id.*, at 13-27.

14

waived the right to complain about allegedly inconsistent findings by the jury, the verdict is in fact consistent, and Plaintiff would be disproportionately prejudiced should the Court grant a new trial.[50] She further argues that remittitur is not warranted and that her counsel's closing argument was entirely proper.[51]

## B. Standard and Scope of Review

In considering a motion for a new trial based on an allegation that the jury returned inconsistent answers to interrogatories, the court first looks to determine if there is a logical explanation that avoids the alleged inconsistency. If the court cannot reconcile the answers, a new trial is necessary.[52]

In considering a motion for a new trial under Superior Court Civil Rule 59, the Court "weighs the evidence in order to determine if the verdict is one which a reasonably prudent jury would have reached."[53] The Court should only set aside a verdict if it is clear that the "verdict was the result of passion, prejudice, partiality, corruption, or if it is clear that the jury disregarded the evidence or law."[54] A jury's verdict with respect to damages is presumed to be correct, "unless it is so grossly disproportionate to the injuries suffered so as to shock the Court's conscience and sense of justice."[55] Where a verdict that "is so grossly excessive as

---

[50] Plf.'s Br. Opp. Mot. New Tr., at 10-19, D.I. 366.
[51] *Id.,* at 20-31.
[52] *CitiSteel USA, Inc. v. Connell Ltd. P'Ship,* 1998 WL 309801, at *4 (Del. 1998).
[53] *Burgos v. Hickok,* 695 A.2d 1141, 1145 (Del. 1998).
[54] *Cooke v. Murphy,* 2014 WL 3764177, at *2 (Del. 2014).
[55] *Id.*

to shock the Court's sense of justice and the impropriety of allowing it to stand is manifest" it must be set aside.[56]

## C. Discussion

### 1. The answers to the interrogatories were not inconsistent.

The appropriate starting point for determining whether answers to interrogatories are inconsistent is the interrogatories themselves.[57] If, after parsing the questions, it appears that the questions ask the same thing, but have produced different answers, then the Court must deal with the resulting inconsistency. But, if the questions do not ask the same thing, then there is not necessarily an inconsistency, and the jury's verdict may be upheld.

The relevant pairs of questions and answers are Questions 2 and 3, which deal with the negligent failure to warn claim, and Questions 4 and 5, which deal with the failure to warn product liability claim. They read as follows:

> 2.    Do you find by a preponderance of the evidence that Ford Motor Company negligently failed to warn Mr. Knecht of risks inherent in the use of its products?
>
> Yes.
>
> 3.    Do you find by a preponderance of the evidence that Ford Motor Company's negligent failure to warn was a cause of Mr. Knecht's development of mesothelioma, in that Mr. Knecht would have noticed and acted upon an adequate warning had it been present?

---

[56] *Lacey v. Beck,* 161 A.2d 579, 581 (Del. Super. Ct. 1960).
[57] The Court does not agree with Plaintiff that by agreeing to the interrogatories on the Verdict Sheet, Ford has waived any claim that the answers were irreconcilably inconsistent.

16

No.

4.     Do you find by a preponderance of the evidence that a friction product manufactured, sold, or otherwise placed into the stream of commerce by Ford Motor Company was defective because it lacked a warning of a risk which could have been avoided by the giving of an adequate warning?

Yes.

5.     Do you find by a preponderance of the evidence that the defect in a friction product manufactured, sold, or otherwise placed in the stream of commerce by Ford Motor Company caused Mr. Knecht's mesothelioma?

Yes.

The claimed inconsistency lies in the answers to Questions 3 and 5, but it is really Question 4 which explains the answer to Question 5. A close reading of those Questions 3 and 4 reveals that, while they both deal with Ford's failure to warn, the phrasing and call of each question is different. Question 3 focuses on Mr. Knecht and asks whether he **would have** noticed and acted on an adequate warning had one been present. Question 4, on the other hand, does not focus on Mr. Knecht, but asks more generally, without specific reference to Mr. Knecht, if a risk **could have** been avoided by an adequate warning. Recognizing that "would" is the past tense of "will" and "could" is the past tense of "can" helps demonstrate how the expressions "would have" and "could have" address different concepts. It is the difference between something that "will" happen and something that "can" happen. Thus, the term "would have" expresses certainty about a result, while the term "could have" merely expresses the possibility of a result.

17

The Court now applies these considerations to the answers to Questions 3, 4, and 5. A logical interpretation of the jury's answer to Question 3 is that, had there been an adequate warning, Mr. Knecht would not have noticed it and acted upon it. In other words, the jury determined that Ford's negligent failure to warn was not the cause of Mr. Knecht's mesothelioma because Mr. Knecht, either would not have noticed an adequate warning, or, if he had noticed one, would have disregarded that warning. Since the question was worded in the conjunctive, a "yes" answer required the jury to find both that Mr. Knecht would have noticed a warning and would have acted upon that warning. Thus, a failure either to notice or to act required a "no" answer. Support for the conclusion that the jury determined that Mr. Knecht would not have acted on an adequate warning is found in the jury's determination that Mr. Knecht himself was 30% responsible for his mesothelioma, the largest percentage of culpability of any of the contributors to his development of the disease.[58] Conversely, a logical interpretation of the jury's answer to Question 4 is that Ford's products were defective because some person, not necessarily Mr. Knecht, could have avoided a risk had there been an adequate warning. In other words, an adequate warning might have allowed someone to avoid a risk of mesothelioma had there been an adequate warning. Because Ford's products were defective in that general way, and because Mr. Knecht was exposed to Ford's products, Ford's defective products caused Mr. Knecht's mesothelioma, resulting in a "yes" answer to Question 5. In essence, it appears that the jury determined that Mr. Knecht could have

---

[58] Verdict Sheet, at Question 7, D.I. 353.

18

avoided the risk posed by Ford's defective product had there been an adequate warning, but actually would not have done so. The Court finds, then, that there is a logical explanation for the jury's answers to Questions 2 and 3 and 4 and 5 that allows the answers to be reconciled and avoids the alleged inconsistency.

### 2. The Court will not order a new trial, nor will it order remittitur.

Ford claims that it is entitled to a new trial because the jury's verdict was the result of bias, passion, or prejudice caused by Plaintiff's counsel during closing argument, and that the admission of cumulative notice evidence inflamed the jury and likely impacted the verdict.[59] In support of its argument that Plaintiff's counsel engaged in improper conduct, it cites a number of examples from counsel's closing arguments.[60] Those examples include what Ford characterizes as arguments that Ford "'tested on human beings'" and "intentionally allowed thousands of people to die;"[61] improperly asked the jury to place itself in the place of Mr. Knecht;[62] improperly criticized Ford's basic litigation conduct;[63] and violated the Court's rulings by asking the jury to consider the loss of the entire Knecht family, including non-parties, not just Plaintiff Paula Knecht;[64] and by ignoring limitations on the admissibility of evidence.[65]

---

[59] Def.'s Br. Mot. New Tr., at 20,26, D.I. 363.
[60] *Id.,* at 20-26.
[61] *Id.,* at 20-21.
[62] *Id.,* at 21.
[63] *Id.,* at 23-24.
[64] *Id.,* at 25.
[65] *Id.,* at 25-26.

19

For its part, Plaintiff points out that Ford only objected three times to counsel's summation.[66] Plaintiff further points out that in response to the first objection, counsel clarified for the jury that he was not asking the jury to put itself in Mr. Knecht's position, because "'that's not appropriate.'"[67] The other two objections related to the issue of documents introduced for notice purposes only.[68] Plaintiff also argues that much of what Ford complains of as inflammatory were arguments addressed to punitive damages and that Ford had opposed bifurcating the trial so that punitive damages could be addressed separately.[69] Finally, Plaintiff suggests that the cumulative introduction of notice exhibits more likely bored the jury as opposed to inflaming it.[70]

The Court finds no merit in Ford's argument that the compensatory damages award was rendered by a jury inflamed by impermissible comments made by counsel in summation. Apart from the Court's own observation that the jury did show any visible signs of being aroused by passion, the nuanced answers to the Verdict Sheet belie any such notion. The Court believes that an impassioned, biased, prejudiced jury would have been moved to find against Ford across the board, including finding that Ford's negligent failure to warn Mr. Knecht was the cause his mesothelioma. This jury did not do that.

---

[66] Plf.'s Br. Op. Mot. New tr. at 30, D.I. 366.
[67] *Id.*
[68] *Id.*
[69] *Id.*, at 31.
[70] *Id.*

The Court turns first to Ford's "Golden Rule"[71] argument because it is the only objection Ford raised to any of the comments Plaintiff's counsel made in summation that it now finds so inflammatory and prejudicial that the Court should reject the jury's verdict and order a new trial. It is helpful to consider the language and context of Plaintiff's counsel's comments, Ford's objection, the Court's assessment of the situation, Ford's counsel's comments in response to the Court's direction to Plaintiff's counsel, and Plaintiff's further comments to the jury. In other words, it is helpful to consider everything relevant to the objection. Prior to the comments that drew Ford's objection, Plaintiff's counsel was asking a series of questions such as, "How much is ten years of a person's life worth?" and, "What's the dollar amount that's going to make her [Mrs. Knecht] whole again?" designed to focus the jury on awarding compensatory damages.[72] Then, after a video[73] was played, the transcript resumes:

> MR. KRAFT: How does that weigh on someone's mind? We're in 2018. Your doctor is telling you there is nothing modern medicine can do to make you well. The clock that we never think about when our clock is going to end, now there's an end point. And you may get a few more months. You may get a few more years. But every time you go to bed at night, you don't know if you are going to wake up. And you know that every day that you live going forward is going to be a day in pain, short of breath,

---

[71] A "golden rule argument" is one in which "counsel asks the jury to place themselves in the shoes of a party to the suit in arriving at a verdict, and to render such verdict as they would want rendered in case they were similarly situated." *Delaware Olds, Inc. v. Dixon*, 367 A.2d 178, 179 (Del. 1976).

[72] 6/5 PM Tr. 37-38.

[73] The transcript does not identify what video Plaintiff's counsel played. The Court believes it was a portion of Larry Knecht's video deposition.

21

not being able to live the life you used to live.

MR. REDMOND: Objection, Your Honor.

THE COURT: Sidebar.

MR. REDMOND: He's violating the golden rule, putting the jury in the position of the decedent.
THE COURT: I think the term "you" gets tossed around a lot. I don't know - -

MR. KRAFT: I'm referring to Mr. Knecht.

THE COURT: You used the term "you" a lot. And I don't think you're meaning necessarily the jury, but let's be clear about that. Because "you" is a term that I think people with meaning it precisely as the other person. It's sort of a generic for everybody. That's the way I took it. But I think you should make that clear.

MR. KRAFT: Okay, I will, Judge.

MR. REDMOND: Thank you, Your Honor.

MR. KRAFT [addressing the jury]: Ladies and gentleman, I'm not asking you to put yourself in Mr. Knecht's position, because that's not appropriate. As a jury you have to try to assess what he was thinking, what he was going through, knowing that the rest of his life was going to be in pain, short of breath. You as a jury have to figure out a dollar amount to compensate that.[74]

In the moment, the Court did not perceive Plaintiff's counsel to be asking the jury to fix appropriate compensation by placing themselves in Mr. Knecht's shoes, and imagining themselves experiencing painful shortness of breath for the remaining few months of their lives. Rather, the Court took the word "you" as used by Plaintiff's counsel as a universal,

---

[74] *Id.,* at 38-39.

22

generic term for Mr. Knecht and anyone in his position. The Court remains of that view. Further, the Court recognized that the imprecise use of "you" needed to be made more precise, lest it be misinterpreted. For that reason, the Court directed Plaintiff's counsel to clarify about whom he was speaking, which he did. The Court also notes that the approach the Court took appeared to satisfy Ford's counsel. Accordingly, the Court finds that Ford's contention it is entitled to a new trial because Plaintiff's counsel breached the "Golden Rule," and, thus, inflamed the jury resulting in excessively large damages, without merit.

The remaining examples Ford cites as improper and inflammatory comments did not draw any objections. Ford does not explain how such comments could have had so great an impact on the jury so as to warrant rejecting its verdict and yet escape Ford's notice at trial. Because Ford did not object at trial, the Court deems Ford to have waived its complaints about them now. But, even if not waived, the Court finds that the comments were either not improper, or did not have the impact on the jury Ford imagines.

Some of Ford's accusations of impropriety must be viewed in the context of the structure of the trial. In addition to compensatory damages, Plaintiff sought punitive damages against Ford. The jury was instructed on punitive damages in relevant part:

> If you find that the conduct of Ford was malicious, willful, reckless, wanton, or fraudulent, then you may award punitive damages against it.
>
> Malicious conduct is the intentional doing of a wrongful act with knowledge that the act is wrongful.
>
> Willful conduct is the intentional doing of an act with

23

knowledge that harm may result.

Reckless conduct is the doing of an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness.

Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's safety.

Punitive damages are awarded for the limited purpose of punishment and to deter others from the commission of like offenses. The amount of punitive damages must be based on reason and justice taking into account all the circumstances, including the nature and enormity of the wrong and such aggravating and mitigating circumstances as may be shown. The property or wealth of the defendant is a legitimate factor for your consideration. The amount awarded, if any, must be reasonably related to the injury and to any damages given as compensation and not disproportionate to the circumstances.[75]

The trial was not split into separate phases – one to hear evidence on fault and compensatory damages, and the other to hear argument on malicious, willful, reckless, wanton conduct and punitive damages. Plaintiff suggested a procedure where the jury would determine whether punitive damages were appropriate, and then, if it did, determine the amount of those damages at a second phase of the trial where limited financial information and argument would be presented.[76] Plaintiff suggested this procedure to avoid the possibility of prejudice to Ford from a punitive damages argument in the first phase of the trial.[77] Ford opposed such

---

[75] Jury Instructions, at 44-45, D.I. 352.
[76] 6/4 Tr. 49.
[77] *Id.,* at 49-50.

24

a bifurcation.[78]

Ford now argues that some of Plaintiff's counsel's comments, which it found unobjectionable at trial, and which the Court finds were addressed to the issue of punitive damages, improperly inflated the jury's compensatory damages award. The Court is not sympathetic. In pursuit of punitive damages, Plaintiff's counsel was entitled to argue that the evidence supported a conclusion that Ford acted maliciously, willfully, recklessly, and wantonly, as those terms were explained by the Court. Put another way, it was proper for Plaintiff's counsel to argue that Ford long knew that its failure to warn of the dangers of asbestos exposure was wrong, and that Ford also long knew that the result of that failure to warn would be that people like Mr. Knecht and others would die.

Arguments that Ford "tested on human beings" and allowed thousands of people to die were arguments addressed to punitive damages.[79] The Court takes Ford's lack of objection at trial as an indication that Ford understood that Plaintiff's counsel obviously was speaking metaphorically. Now, Ford seems to think that Plaintiff's counsel was speaking literally – "The idea that Ford intentionally tested the effects of asbestos on human beings has no support in the record."[80] Everyone knew that no actual experiments of that type had been conducted by Ford. Rather, Plaintiff's argument was that, Ford, being on notice of the

---

[78] *Id.,* at 50-51.
[79] *See, e.g.* "'Ford tested on human beings for 60 years before they put a warning. That's unethical conduct. That's callus [sic] conduct. That's reckless conduct. That's conduct that deserves to be punished.'" Def.'s Br. Mot. New Tr., at 20, D.I. 363.
[80] *Id.,* at 21.

deadly effects of asbestos exposure and of people dying from that exposure, waited for 60 years to put a warning on its products, and that delay amounted to a figurative experiment to see how many people would die before a warning became necessary. When viewed in its proper context, the argument was not improper.

Next, the Court turns to Plaintiff's counsel's treatment in rebuttal summation of a topic all too familiar to those who sat through the trial – the "interrogatory" issue. Briefly, Mr. Knecht answered an interrogatory stating that he had been exposed to asbestos while performing a number of jobs, such as working on boilers and pumps. At his discovery deposition he denied those possible exposures. His attorney at the deposition[81] stated that the interrogatory answer was incorrect and wound be corrected. It never was. At trial, no evidence of other exposures, apart from some possible construction exposure, was presented. Plaintiff maintained that the deposition testimony was correct and that the interrogatory answer was not. Ford insisted that the jury must accept the interrogatory answer because it was never corrected. The jury was fully aware of the parties' contentions, since the issue was addressed any number of times throughout the trial. In the Court's view, Ford's stubborn insistence that the jury should credit something that was plainly not true, simply because Plaintiff's deposition attorney failed to correct a mistake, likely did far more damage to Ford's credibility than four overwrought sentences in rebuttal summation after more than 15

---

[81] The deposition attorney was not one of the trial attorneys, but was from *pro hac* counsel's firm.

days of testimony and nearly a full day of argument. The Court need not determine whether this portion of Plaintiff's counsel's argument was improper, because, even if it was, it was harmless in the context of the entire trial.

The remainder of Plaintiff's counsel's summation remarks about which Ford now complains similarly were either not improper, or, if improper, were harmless. For example, there is no evidence that Dr. Finley, who was hired as an expert witness for Ford, "would say anything for money" as Plaintiff's counsel stated. But, Ford did not object to the comment, which occurred early in Plaintiff's counsel's opening summation, counsel moved on immediately to discussing the evidence, and the jury, in fact, was at least somewhat sympathetic to De. Finley's testimony when found that construction related exposures contributed to Mr. Knecht's illness.[82] Ford is simply wrong in its argument that Plaintiff's counsel improperly asked the jury to compensate the Knecht family as opposed to only Mrs. Knecht. Not only did the entire Knecht family have an emotional interest in the outcome of the litigation as the family of Larry Knecht apart from any financial interest, but Mrs. Knecht was suing not only in her individual capacity, but also as the independent executrix of the estate of Larry Knecht. The family of Larry Knecht had a financial interest in the outcome as well. Further, the jury was instructed to consider the beneficiaries of Larry Knecht in awarding compensatory damages.[83] Therefore, remarks about the interests of the Knecht

---

[82] 6/5 PM Tr. 5-6. *See,* Verdict Sheet, at Question 7, finding Johns-Manville 10% negligent, half of Ford's percentage of negligence.
[83] *See,* Jury Instructions, at 40-41, D.I. 352.

27

family were not improper. Finally, arguments that Plaintiff's counsel improperly argued the truth of the matter asserted in documents admitted for notice purposes only is unpersuasive in light of the absence of objection, the Court's instructions to the jury, and the manner in which the documents were discussed with the various experts during their testimony.

Ford's final argument in support of its request for a new trial is that the cumulative evidence of notice evidence inflamed the jury and likely affected the verdict.[84] As mentioned previously, an inflamed jury would not have found that Ford's negligent failure to warn did not cause Mr. Knecht's mesothelioma. Additionally, an inflamed jury would not have taken three days to deliberate, nor would it have found Mr. Knecht 30% negligent for causing his own illness – the largest percentage of negligence the jury found. More likely is Plaintiff's suggestion that cumulative notice evidence bored, rather than inflamed the jury.[85]

Alternatively, Ford seeks remittitur. In making its argument that the jury's verdict was excessive, Ford focuses on the compensatory damages award of $40.625 million. Consistent with New Mexico law, the jury was instructed on compensatory damages:

> This lawsuit has been brought by Paula Knecht, individually and on behalf of the surviving beneficiaries of Larry Knecht, who is now deceased.
>
> The law allows damages to be awarded to the surviving spouse and beneficiaries if the death or the related damages described in this instruction were caused by the wrongful act, neglect, or default of another. If you should find for Paula

---

[84] Def.'s Br. Mot. New Tr., at 26-27, D.I. 363.
[85] The Court notes that many of the notice exhibits are lengthy, densely written documents which the jury likely found unnecessary to read.

Knecht on the question of liability, you must then fix the amount of money you deem fair and just for the life of Larry Knecht, including in your award compensation for any of the following elements of damages proved by the evidence:

1. The pain and suffering experienced by Mr. Knecht between the time of injury and death;

2. The value of Mr. Knecht's life apart from his earning capacity;

3. The mitigating or aggravating circumstances attending the wrongful act, neglect, or default;

4. The emotional distress to Paula Knecht caused by the loss of society, companionship, and sexual relations enjoyed with Mr. Knecht;

5. You may consider the loss to the beneficiaries of other expected benefits that have a monetary value. While the presence or absence of a measurable monetary loss to the beneficiaries is a factor for consideration, damages may be awarded even where monetary loss to the surviving beneficiaries cannot be shown.

The property or wealth of the beneficiaries or of the defendant is not a legitimate factor for your consideration.

No fixed standard exists for determining fair and just damages. You must use your judgment to decide a reasonable amount. Your verdict must be based on evidence, not on speculation, guess, or conjecture. You must not permit the amount of damages to be influenced by sympathy or prejudice.[86]

Plaintiff did not introduce any evidence of monetary damages such as medical bills or lost wages. The only other datum the jury had was that Mr. Knecht, who was 71 at the time of

---

[86] Jury Instructions, at 40-41, D.I. 352.

his death, had a life expectancy of 82.35 years.[87] The jury assigned Ford 20% of the negligence leading to Mr. Knecht developing mesothelioma, resulting in a compensatory award of $8.125 million against Ford.

Ford would have the Court join it in focusing on the larger $40.625 figure in considering whether the verdict was excessive in comparison with other compensatory damages awards it brings to the Court's attention. But, it is not clear why the higher figure is the correct one for the Court to consider, or just how comparable the cases Ford cites are to this case.[88] It also is not clear how the jury arrived at its calculations. Did it start by determining that $8.125 million was the appropriate amount of damages Ford ought to pay, and then calculate that because Ford was 20% negligent, the total compensatory damages award should be $40.625 million? Or, the other way around?[89] In the end, the Court finds that it does not matter. No one is required to pay $40.625 million and Ford is responsible for the considerably smaller amount of $8.125 million. Therefore, the Court will consider the actual amount for which Ford was determined to be responsible in assessing whether remittitur is appropriate.

Ford has offered citations to damages awards in several Delaware cases in an effort

---

[87] *Id.,* at 42.

[88] It seems that the jury employed some mathematical equation to reach the figure of $40.625 million as opposed to some round number such as $40 million or $45 million. The Court has been unable to fathom the elements of that equation, nor have the parties offered any suggestions.

[89] At oral argument, Ford argued that if the jury followed the jury instructions, it would have been required to reach the larger figure first.

to convince the Court that the award here should shock the Court's conscience.[90] Plaintiff cites other cases from Delaware and around the country in support of her position that the verdict should not shock the Court's conscience.[91] While these types of comparisons can be helpful, they are imperfect proxies. Apart from the obvious fact that no two cases are factually identical, multiple other factors make comparisons difficult. Such other factors include, but are far from limited to, the jurisdiction whose substantive law applies to the case, the jury instruction on damages of that jurisdiction, whether the plaintiff was deceased or living at the time of trial, the life expectancy of the plaintiff, the length of illness before death if the plaintiff is deceased, the degree of kinship of plaintiffs seeking damages for loss of consortium, and the closeness of the personal relationships of plaintiffs seeking loss of consortium damages with the deceased.

Ultimately, the Court relies upon the Delaware Supreme Court for guidance, "'[T]his Court interferes with the verdict of the jury only with great reluctance.[92] Further, "A verdict will not be disturbed as excessive unless it is so clearly so as to indicate that it was the result of passion, prejudice, partiality, or corruption; or that it was manifestly the result of disregard of the evidence or applicable law."[93] Ford has failed to convince the Court that the jury's verdict was so clearly excessive that it resulted from passion, prejudice, partiality, or

---

[90] Def.'s Br. Mot. New Tr., at 16-19., D.I. 363.
[91] Plf.'s Br. Opp. Mot. New Tr., at 26-29.
[92] *Dana Companies, LLC v. Crawford*, 35 A.3d 1110, 1113 (Del. 2011), quoting *Burns v. Del. Coca-Cola Bott. Co.,* 224 A.2d 1234, 1236 Del. 1997).
[93] *Riegel v. Aastad,* 272 A.2d 715, 717-18 (Del. 1970).

corruption; or that the jury manifestly disregarded the evidence or the law. The jury was able to parse both of the theories of liability presented by Plaintiff, finding for her on one and against her on the other, and apportion culpability rationally. Mr. Knecht testified that he worked with parts from all three major American automobile manufacturers. All three were assigned equal fault.[94] Mr. Knecht had the least exposure to asbestos from construction work, and the verdict reflected that fact.[95] Finally, the jury placed the greatest responsibility for his mesothelioma on Mr. Knecht, himself.[96] It is difficult to believe that a jury consumed by passion, prejudice, partiality, or corruption, or one which manifestly disregarded the evidence or law could find Mr. Knecht more culpable than Ford.

## V. CONCLUSION

For the reasons set forth in this Memorandum Opinion, Ford Motor Company's Renewed Motion for Judgment as a Matter of Law under Rule 50(b) or, in the Alternative, a New Trial is **DENIED.**

Also for the reasons set forth in this Memorandum Opinion, Ford Motor Company's Motion for a New Trial, or in the Alternative Remittitur is **DENIED.**

Plaintiff is directed to submit a form of order for the entry of judgment.

_____
Ferris W. Wharton, J.

---

[94] Verdict Sheet, at Question 7, D.I. 353.
[95] *Id.*
[96] *Id.*

32